569 So.2d 533 (1990)
Charles R. CRAMER, Jr. and Neva Gage Cramer
v.
ASSOCIATION LIFE INSURANCE COMPANY.
No. 90-CC-0804.
Supreme Court of Louisiana.
November 8, 1990.
Christine Lipsey, Breazeale, Sachse & Wilson, Baton Rouge, for Association Life Ins. Co., Inc., defendant-applicant.
Allen M. Posey, Jr., Baton Rouge, for Charles Cramer and Neva Cramer, plaintiff-respondent.
Richard Tyler, amicus curiae.
David Radlauer, amicus curiae.
Woodrow E. Eno, amicus curiae.
W. Shelby McKenzie, amicus curiae.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT
COLE, Justice.

FACTS
On September 24, 1986, plaintiffs, Charles and Neva Cramer, Jr., filed suit against defendant, Association Life Insurance Company, Inc. (ALIC), claiming benefits due under a health insurance policy purchased by Mr. Cramer's employer, Advertising By Computer, Inc. (ABC). Plaintiffs also sought penalties and reasonable attorney's fees pursuant to La.R.S. 22:657 *534 because of defendant's alleged arbitrary and capricious failure to pay their claim. Defendant, in its original answer, denied any obligation to plaintiffs. In an amended and supplemental answer, defendant asserted plaintiffs do not have a cause of action for penalties and mandatory attorney's fees under La.R.S. 22:657 because such claims are preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C.A. § 1001, et seq. (ERISA).
On December 15, 1988, defendant filed the peremptory exception raising the objection of no cause of action, and, alternatively, a motion for partial summary judgment, claiming plaintiffs' claim for statutory penalties and attorney's fees under R.S. 22:657 was preempted by ERISA. At the same time, defendant filed a motion in limine requesting the trial court to deny plaintiffs' demand for a jury trial because the case is governed by ERISA and the federal common law interpreting ERISA precludes a trial by jury. Plaintiffs filed a cross motion for partial summary judgment, opposing defendant's exception and motion for summary judgment, and requested an order of the court declaring ERISA inapplicable to the instant case.
The trial court ruled that ERISA was inapplicable to the instant case, denied defendant's exception, denied defendant's motion for partial summary judgment and its motion in limine to preclude a jury trial, and granted plaintiffs' motion for summary judgment. Defendant then applied for supervisory writs to the Court of Appeal, First Circuit. The Court of Appeal issued a writ of certiorari to review the trial court's ruling on the following issues:
1) whether ERISA applies to the case at bar, thus requiring the application of ERISA's civil enforcement provisions and thereby preempting plaintiffs' claim for penalties and mandatory attorney's fees under La.R.S. 22:657;
2) if ERISA applies, are plaintiffs precluded from having a jury trial;
3) if ERISA applies, should the evidence at trial be limited to that before defendant at the time of its final claims decision, thus precluding a de novo trial court review and requiring application of an arbitrary and capricious standard of review to the claims decision made by defendant?
After reviewing the case, the Court of Appeal ruled 1) ERISA applies to the case at bar because an "employee benefit plan," as the term is defined in ERISA, existed at the time the plaintiffs' claims arose; 2) plaintiffs' claim for penalties and mandatory attorney's fees is not preempted by ERISA; 3) plaintiffs are entitled to a jury trial of those issues pertaining to benefits under the Louisiana Insurance Code, but are not entitled to a jury trial of any issue governed by ERISA; and 4) the evidence at trial should not be limited to that before the defendant at the time of its final claims decision, and the arbitrary and capricious standard is not applicable in the instant case.
Defendant applied to this Court for supervisory writs to challenge the rulings of the Court of Appeal. Specifically, defendant challenges 1) the Court of Appeal's ruling that ERISA does not preempt plaintiffs' state law claim for penalties and mandatory attorney's fees under La.R.S. 22:657; and 2) the Court of Appeal's ruling that plaintiffs are entitled to a jury trial of the claim under R.S. 22:657. Plaintiffs, in their response to defendant's arguments, do not challenge the Court of Appeal's ruling that ERISA applies to the instant case. Therefore, the primary issue before this Court is whether ERISA preempts La.R.S. 22:657. If La.R.S. 22:657 is preempted by ERISA, then plaintiffs have no cause of action for penalties and mandatory attorney's fees, and are not entitled to a jury trial.

I.
The Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq., is a comprehensive set of regulations governing employee pension and welfare plans. An employee welfare-benefit plan is defined in ERISA as one which provides to employees "medical, surgical, or hospital care or benefits, or benefits in *535 the event of sickness, accident, disability [or] death," whether these benefits are provided "through the purchase of insurance or otherwise." ERISA imposes upon pension plans a variety of substantive requirements relating to participation, funding, and vesting. 29 U.S.C. §§ 1051-1086. Additionally, ERISA establishes various uniform procedural standards concerning reporting, disclosure, and fiduciary responsibility for both pension and welfare plans.
To effectuate the substantive and procedural provisions of ERISA, Congress created within the Act an extensive civil enforcement scheme. 29 U.S.C. § 1132. Under the civil enforcement provisions of ERISA, a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits. Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits. Additionally, in an action under the civil enforcement provisions, the court in its discretion may allow an award of attorney's fees. Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). However, the civil enforcement provisions do not allow exemplary damages. Sommers Drug Stores Co. Employees Profit Sharing Trust v. Corrigan Enterprises, Inc., 793 F.2d 1456, 1464 (5th Cir.1986), cert. denied 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837, and 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987).
Recognizing that the broad provisions of ERISA overlap with numerous state regulatory laws, Congress put in ERISA three provisions relating to the preemptive effect of the federal legislation, often referred to as the pre-emption clause, the savings clause, and the deemer clause. The pre-emption clause[1] states:
Except as provided in subsection (b) of this section [the savings clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ... (Emphasis added.)
The savings clause[2] states:
Except as provided in subparagraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities. (Emphasis added.)
The deemer clause[3] states:
Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts ... (Emphasis added.)
As noted by the United States Supreme Court, the three pre-emption sections of ERISA are not a model of legislative drafting. Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).[4] However, the sections generally can be said to work as follows: if a state law relates to employee benefit plans it is preempted unless the law "regulates insurance," in which case the savings clause saves the law from pre-emption; but, a state law that purports to regulate insurance may not deem an employee benefit plan to be an insurance company.
In this case, plaintiffs seek punitive damages and attorney's fees for defendant's alleged arbitrary and capricious failure *536 to pay medical benefits under an employee welfare benefit plan. Plaintiffs rely on La.R.S. 22:657 for the recovery of such damages. R.S. 22:657 provides, in pertinent part:
All claims arising under the terms of health and accident contracts issued in this state ... shall be paid not more than thirty days from the date upon which written notice and proof of claim ... are furnished to the insurer unless just and reasonable grounds ... exist. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court.
The above-cited portion of § 657 provides for mandatory attorney's fees and penalties in cases where an insurance company arbitrarily fails to pay benefits. As noted above, however, the ERISA civil enforcement provisions do not allow punitive damages for the arbitrary failure to pay employee welfare benefits, and attorney's fees in such actions are discretionary not mandatory. Thus, a concern in resolving the issue in the present case is whether La.R.S. 22:657 is a law which "regulates insurance" within the meaning of the savings clause such that the provision is not preempted by ERISA.
In interpreting the pre-emption clauses of ERISA, we have the benefit of two United States Supreme Court cases which clarify their scope and meaning. In Pilot Life Insurance Co. v. Dedeaux, supra, the Court held to be preempted by ERISA state common law tort and breach of contract actions asserting improper processing of a claim for benefits under an employee benefit plan. In Metropolitan Life Insurance Co. v. Massachusetts, supra, the court found a Massachusetts minimum health-care benefits law not to be preempted by ERISA. A careful reading of these two cases reveals the proper analysis to be used in determining whether a specific state law is preempted by ERISA.
First, we must determine if the state law at issue "relates to" an employee benefit plan such that it is within ERISA's pre-emption clause. In Pilot Life, the court noted that the phrase "relate[s] to" should be given its broad, common-sense interpretation. Thus, the court held, a state law "relates to" a benefit plan if it "has a connection with or reference to such a plan." It is not necessary for the law to be specifically designed to affect employee benefit plans. 105 S.Ct. at 2389. The court applied the common-sense test to the cause of action raising improper handling of a claim for benefits under an employee benefit plan, and found the state law "undoubtedly meet[s] the criteria for pre-emption" under the pre-emption clause. 107 S.Ct. at 1553.
Applying the common-sense test to R.S. 22:657, it is clear the statute "relates to" an employee benefit plan. The basis for the plaintiff's suit is the defendant-insurer's alleged arbitrary and capricious failure to pay benefits under an employee benefit plan. R.S. 22:657 is specifically directed to an insurance company's handling of a claim under such an employee benefit plan.
Having found R.S. 22:657 "relates to" an employee benefit plan, we next determine if the statute "regulates insurance" and thus comes within the savings clause. To make this determination, we again turn to Pilot Life. In Pilot Life, the Supreme Court found Mississippi's common law of bad faith was preempted as it applied to a plaintiff's claim for the improper handling of an employee benefit plan. The Court first noted Mississippi's common law of bad faith was not specifically directed at insurance companies, but rather was a law of general application. Thus, the law did not fit the common sense meaning of the phrase "regulates insurance." However, the Court did not rest its holding solely on the common sense interpretation of the phrase. Instead, the Court sought guidance from federal jurisprudence interpreting the phrase "business of insurance" as *537 used in the McCarran-Ferguson Act,[5] and from the role of the saving clause within the entire structure of ERISA.

A.
Three criteria have been used to determine whether a particular practice falls under "the business of insurance" for purposes of the McCarran-Ferguson Act. First, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry. 107 S.Ct. at 1553. As applied to Mississippi's common law of bad faith, the court found that none of the factors was met. The common law of bad faith does not effect a spreading of policyholder risk. Further, although the common law of bad faith may be said to concern the policy relationship between the insured and the insurer, the connection to such relationship is tenuous. The law of bad faith does not define the substance of the relationship, but merely provides for a remedy when there has been a breach of the contract defining the relationship. Lastly, the court noted Mississippi's common law of bad faith is a law of general application not limited to entities in the insurance industry.
Applying the McCarran-Ferguson criteria to the facts of this case reveals much of what the Court in Pilot Life said about Mississippi's common law of bad faith applies to R.S. 22:657. Although § 657 is limited to insurance companies and thus meets the third factor of the McCarran-Ferguson test, factors one and two are not met. The statute is not an integral part of the insurer-insured relationship. The insurer-insured relationship is defined in the substantive provisions of the insurance contract, and consists of the respective obligations of each party to the contract. Just like the common law of bad faith found by the Supreme Court in Pilot Life not to be integral to the insurer-insured relationship, R.S. 22:657 merely provides a remedy, albeit statutory, for an insurance company's breach of a previously defined substantive relationship. Instead of regulating the substantive terms or content of insurance policies, R.S. 22:657 is primarily aimed at the procedural aspect of processing and settling claims.
Also, the statute does not effect a spreading of policyholder risk. As we appreciate the use of the term "spreading of risk" in the context of an insurance policy, the risk focused upon is that risk for which the insurance company has specifically contracted to reimburse its insured. In Union Labor Life Ins. Co v. Pireno, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982), the Supreme Court interpreted the phrase "spreading of policyholder risk" in the context of the McCarran-Ferguson Act. The court stated, "[t]he transfer of risk from insured to insurer is effected by means of the contract between the partiesthe insurance policyand that transfer is complete at the time that the contract is entered." 458 U.S. at 130, 102 S.Ct. at 3009. The court went on to note, "... the fundamental principle of insurance [is] that the insurance policy defines the scope of risk assumed by the insurer from the insured." 458 U.S. at 131, 102 S.Ct. at 3010. Thus, when looking to see if a particular practice acts to "spread the risk," we must focus upon the actual risks that were transferred from the insured to the insurer and determine if the practice acts to alter the contractual apportionment of those risks.
In this case, the Court of Appeal found, and plaintiffs argue, R.S. 22:657 meets the first factor of the McCarran-Ferguson factors because it acts to spread the risk that an insurer will improperly handle a settlement claim. However, the Court of Appeal's reasoning misconstrues the proper focus of the phrase "spreading a policyholder's risk." The employee benefit plan in question pertains to health insurance. In a health insurance contract, the risk spread among policyholders is the risk that *538 an insured will require medical care for a covered illness. The insurance contract does not seek to spread the risk that the insurer will improperly handle a settlement claim. In fact, if the Court of Appeal's reasoning were correct, the Supreme Court in Pilot Life would have found the Mississippi law in question to be a practice which acts to spread a policyholder's risk when applied in the context of an employee benefit plan. To the contrary, however, the Supreme Court found Mississippi's law did not have such an effect, and this Court can discern no principled reason why the same conclusion is not warranted in this case. The mere fact that R.S. 22:657 is a statutory remedy while the law in Pilot Life was a common law remedy is a distinction without relevance to the issue of whether R.S. 22:657 acts to spread a policyholder's risk.

B.
Our finding that R.S. 22:657 fails to meet two of the three McCarran-Ferguson criteria does not necessarily end our analysis. As the Court in Pilot Life indicated, the McCarran-Ferguson test is not the sole consideration to be addressed in determining whether a particular state law is preempted by ERISA. A reviewing court should also consider the role of the saving clause in ERISA as a whole to determine if application of the state law in question would interfere with the goals sought to be achieved by ERISA. In Pilot Life, the court referred to the comprehensive civil enforcement scheme of ERISA, and noted it is one of the essential tools for accomplishing the stated purposes of the Act. The court went on to hold Congress clearly expressed an intent that the civil enforcement provisions of ERISA be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits. The court stated, "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." 107 S.Ct. at 1556.
In this case, plaintiffs, ERISA-plan participants, are seeking to use R.S. 22:657 as a vehicle to obtain relief for the alleged improper handling of their claim for benefits. As noted previously, R.S. 22:657 allows punitive damages to be recovered for an insurer's arbitrary refusal to pay benefits, and mandates the payment of attorney's fees. The civil enforcement scheme of ERISA does not allow punitive damages and attorney's fees are discretionary not mandatory. Pilot Life, supra. Thus, there is a clear conflict between R.S. 22:657 and the substantive provisions of ERISA's civil enforcement scheme. Consequently, the clear language used by the Supreme Court in Pilot Life compels us to hold that R.S. 22:657, as applied to an ERISA plan, is preempted by the civil enforcement provisions of ERISA.
In finding R.S. 22:657 not to be preempted, the Court of Appeal stated, "[t]o hold otherwise would violate the most fundamental of all substantial policies of ERISA, viz. to protect the interest of the employee." Cramer v. Association Life Ins. Co., Inc., 563 So.2d 267, 275 (La.App. 1st Cir. 1990). This statement overlooks the fact that Congress created a comprehensive civil enforcement scheme designed specifically to protect the interests of the employee. Under 29 U.S.C. § 1132, plaintiffs have a cause of action against defendant for the recovery of accrued benefits due, and may recover reasonable attorney's fees if the trial court determines the facts warrant such an award. Merely because Congress chose not to adopt the type of remedy available in R.S. 22:657 does not mean employees' interests are not being protected adequately. Indeed, as the court in Pilot Life noted, the civil enforcement provisions in ERISA represent a "careful balancing of the need for prompt and fair claims settlement procedures and the public interest in encouraging the formation of employee benefit plans." 107 S.Ct. at 1556. To disrupt Congress' carefully thought-out remedies by allowing plaintiffs to raise a claim under R.S. 22:657 would be to ignore the *539 strong evidence that Congress intended ERISA's civil remedies to be exclusive.
Our holding in this case is supported by the vast majority of the federal jurisprudence interpreting statutes similar to R.S. 22:657. In Ramirez v. Inter-Continental Hotels, 890 F.2d 760 (5th Cir.1989), the court held that Texas Insurance Code article 21.21 § 16 was preempted by ERISA. The Texas statute furnishes a right of action and allows treble damages and attorneys' fees to persons injured by certain enumerated unfair methods of competition and unfair and deceptive acts or practices in the business of insurance. Plaintiff attempted to use the statute to recover punitive damages for the insurer's failure to pay benefits allegedly due plaintiff. Referring to the McCarran-Ferguson factors mentioned in Pilot Life, the court found the statute does not transfer or spread policyholder risk, and does not define the terms of the relationship between the insurer and the insured. Additionally, the court found the effect of the statute to be indistinguishable from the effect of the common law addressed in Pilot Life. The court stated, "[t]o interpret the savings clause as authorizing such inconsistent state remedies would be to defeat Congressional intent by destroying the exclusivity of ERISA's civil enforcement provisions." 890 F.2d at 763-64. See also, Kanne v. Connecticut Gen. Life Ins. Co., 867 F.2d 489 (9th Cir.1988), cert. denied, ___ U.S. ___, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989) (California statute prohibiting unfair insurance claims processing held preempted by ERISA); In re Life Ins. Co. of N. Am., 857 F.2d 1190 (8th Cir.1988) (Missouri statute prohibiting vexatious refusal to pay insurance claims held preempted by ERISA); Anschultz v. Connecticut Gen. Life Ins. Co., 850 F.2d 1467 (11th Cir.1988) (Florida statute providing private right of action to persons injured by violations of state's insurance code held preempted by ERISA).
Particularly persuasive is the unanimity of the Louisiana federal district courts in holding R.S. 22:657 to be preempted by ERISA.[6] In each of these cases, the court has found R.S. 22:657 to be in conflict with the comprehensive civil enforcement provisions of ERISA. The Court of Appeal in the instant case felt the lower federal court holdings were not persuasive because each was rendered prior to this Court's ruling in Soniat v. Travelers Ins. Co., 538 So.2d 210 (La.1989). However, Soniat deals with a statute which is clearly distinguishable from R.S. 22:657.
In Soniat, this Court considered whether La.R.S. 22:213(B)(7)[7] was preempted by ERISA. Specifically, we considered whether ERISA preempts the portion of § 213 which prevents the cancellation of a policy from prejudicing the rights of a policyholder concerning claims arising prior to the cancellation. In finding R.S. 22:213 to be within the savings clause of ERISA and thus not preempted, we reviewed the McCarran-Ferguson factors and found they were met. More importantly, however, we noted that R.S. 22:213(B)(7) "does not conflict with the substantive provisions of ERISA and ... does not create a conflict with ERISA's civil enforcement scheme." 538 So.2d at 215.
Additionally, a careful reading of Soniat reveals the statute involved in that case is more closely analogous to the mandated-benefit law held by the court in Metropolitan Life not to be preempted by ERISA than it is to R.S. 22:657 or the common law of bad faith involved in Pilot Life. For the reasons discussed below, we believe the United States Supreme Court in Metropolitan Life and Pilot Life has created a distinction between state laws which regulate *540 the substantive terms of the insurance contract, such as the statute involved in Soniat, and those which merely regulate aspects of transacting the business of group insurance, such as R.S. 22:657.
In Metropolitan Life, the Supreme Court addressed the question of whether Massachusetts Gen. Laws Ann., ch. 175, § 47B (West Supp.1985) is preempted by ERISA. The statute requires any general health-insurance policy issued to a Massachusetts resident that provides hospital and surgical coverage, or any benefit plan that has such coverage, to provide as well a certain minimum of mental-health protection. The Court held the statute "regulates insurance" and thus is not preempted by ERISA. Of particular importance is the Court's discussion of the various types of state insurance regulation that exist, and the reason why § 47B was not the type of state regulation intended to be preempted by ERISA. The Court noted state insurance regulations can be categorized as follows: regulation of the insurance carrier, regulation of the aspects of transacting the business of group insurance, and regulation of the content of the insurance contracts. As an example of the kinds of state laws which regulate the content of the insurance contract, the Court mentioned those requiring policies to contain grace periods and conversion privileges. The Court also construed mandated-benefit regulations, like § 47B, to fall within the regulation of the content of the insurance contract.
After categorizing § 47B as a type of law regulating the content of the insurance contract, the Court noted that ERISA "does not regulate the substantive content of welfare-benefit plans." 105 S.Ct. at 2385. The Court then found § 47B not to be preempted by ERISA, and made the following observations which illuminate the rationale both for the holding in Metropolitan Life and the later holding in Pilot Life:
To state the obvious, § 47B regulates the terms of certain insurance contracts, and so seems to be saved from pre-emption by the saving clause as a law `which regulates insurance.' This commonsense view of the matter, moreover, is reinforced by the language of the subsequent subsection of ERISA, the `deemer clause.' which states that an employee-benefit plan shall not be deemed to be an insurance company `for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.' (emphasis added). By exempting from the saving clause laws regulating insurance contracts that apply directly to benefit plans, the deemer clause makes explicit Congress' intention to include laws that regulate insurance contracts within the scope of the insurance laws preserved by the saving clause.
105 S.Ct. at 2389-90. When the quoted language is considered in light of the Court's earlier categorization of the types of state insurance regulation, it is clear the Court in Metropolitan Life was restricting its holding to those state laws which regulate the contents of the insurance contract. In other words, the Court's holding does not address those types of state laws which regulate the carrier or which regulate aspects of transacting the business of group insurance.
The precise scope of the holding in Metropolitan Life is mentioned because it is important to a complete understanding of the rationale used by the Supreme Court in Pilot Life. In Pilot Life, the Mississippi law focused upon, when applied to an employee-benefit plan, did not fall within the category of laws which regulate the content of the insurance contract. Rather, the law, when applied to an employee-benefit plan, more appropriately fit within the Metropolitan Life Court's second category of laws regulating insurance, namely one which regulates aspects of transacting the business of insurance.[8] Consequently, the Court in Pilot Life had to address a law which, unlike the law in Metropolitan Life, *541 governed matters also governed by ERISA. By finding the Mississippi law to be preempted because of its conflict with ERISA's civil enforcement scheme, the Court in Pilot Life essentially created a distinction between state laws which regulate the content of the insurance contract, such as mandated benefit laws, and state laws which regulate aspects of transacting the business of insurance, such as remedial laws pertaining to claims handling. State laws which fall into the latter category are preempted by ERISA because ERISA itself contains a comprehensive civil enforcement scheme which regulates the practice of claims handling. State laws which fall into the former category are not preempted because ERISA itself contains no regulation of the substantive terms of insurance contracts.
With the above distinction in mind, it is clear our holding in Soniat does not conflict with our holding today. The statute involved in Soniat, by preventing the cancellation of a policy from prejudicing the rights of a policyholder concerning claims arising prior to the cancellation, regulates the substantive terms of any health insurance contract issued in Louisiana. It essentially redefines a "covered" illness for purposes of the insurance contract. Thus, the statute falls within the same category of regulations as was involved in Metropolitan Life. R.S. 22:657, on the other hand, has no effect on the substantive terms of the insurance contract. It merely grants a remedy for the breach of a previously defined contractual relationship. Thus, it falls within the category of regulations which regulate aspects of transacting the business of insurance, which are preempted by ERISA.

II.
Because we find La.R.S. 22:657 is preempted by ERISA, it follows that plaintiffs are not entitled to a trial by jury. The Court of Appeal's ruling indicates the only state law claims raised by plaintiffs are those arising under R.S. 22:657. Because the R.S. 22:657 claims are preempted, plaintiffs' only remaining claims arise under ERISA. Federal law is clear that no right to a trial by jury exists under ERISA on an action to recover benefits, or to clarify or enforce rights under an employee welfare benefit plan. Crews v. Central States, Southeast and Southwest Areas Pension Fund, 788 F.2d 332, 338 (6th Cir.1986); Howard v. Parisian, Inc., 807 F.2d 1560, 1567 (11th Cir.1987).

CONCLUSION
We hold La.R.S. 22:657, as applied to a claim under an employee welfare benefit plan subject to ERISA, is preempted by ERISA both because it fails to meet the McCarran-Ferguson criteria and because it conflicts with the civil enforcement provisions of ERISA. The Court of Appeal's denial of defendant's motion for partial summary judgment is reversed and the case is remanded to the trial court for further proceedings in accordance with our ruling.
REVERSED AND REMANDED.
CALOGERO, C.J., dissents and assigns reasons.
LEMMON, J., dissents and will assign reasons.
CALOGERO, Chief Judge, dissenting.
I dissent from the majority's conclusion that La.R.S. 22:657, providing for penalties and attorney's fees to be paid by an insurer who unjustly delays the payment of a claim, is preempted by ERISA. This statute regulates insurance, and therefore ERISA's "saving clause" excepts the statute from preemption.
The majority relies on the United States Supreme Court's decision in Pilot Life in finding that R.S. 22:657 does not fall within the saving clause. In Pilot Life, the United States Supreme Court weighed two major considerations which guided it in Metropolitan Life in determining whether a state law comes under the saving clause. These were: 1) a "common sense view" of the language of the clause itself, and 2) the criteria used to interpret the term "business of insurance" for purposes of the McCarran-Ferguson Act. Pilot Life, 481 *542 U.S. at 48, 107 S.Ct. at 1553, 95 L.Ed.2d at 48.
Under the common sense test, La.R.S. 22:657 clearly falls within the saving clause. In allowing for attorney's fees and penalties to be assessed against an insurer who unjustly fails to pay a claim within thirty days, the statute is directed at regulating the duties of an insurer in any health and accident contract. La.R.S. 22:657 therefore regulates the "business of insurance" and passes the common sense test. In Pilot Life, the Court found that the Mississippi common law of bad faith was not saved under a common sense view because the law was not directed specifically toward the insurance industry, but was firmly planted in principles of tort and contract law. The statute in question here is clearly directed toward the insurance industry and should be found to fall under the language of the saving clause.
As for the second consideration employed in Pilot Life, I find that two of the three McCarran-Ferguson criteria have been met. I agree with the majority that this statute does not have the effect of spreading the policyholder's risk and that the first criterion has not been met. However, I disagree with the majority's finding that the statute is not an integral part of the insurer-insured relationship. Timely payment of a claim is the central obligation of an insurance contract and a matter of major importance in the relationship between the parties to that contract. This statute imposes a duty on the insurer to pay a claim within a certain time and establishes a penalty for breaching that obligation. The statute affects an integral part of the relationship and meets the second McCarran-Ferguson factor. As to the third factor, even the majority concedes, and I agree, that the statute is directed toward entities within the insurance industry.
No one of the McCarran-Ferguson criteria is determinative, and therefore not all three are necessary to find a statute to regulate the business of insurance. Pireno, 458 U.S. at 129, 102 S.Ct. at 3009, 73 L.Ed.2d at 657. Two of the three McCarran-Ferguson factors are met. I find that this, along with the fact that the statute passes the common sense test of regulating the business of insurance, establishes that La.R.S. 22:657 falls under the saving clause and is not preempted by ERISA.
It should also be noted that the primary basis for our finding in Soniat that La.R.S. 22:213B(7) was not preempted was the fact that it is part of the Insurance Code, whose stated purpose is to "regulate insurers and the insurance business." Soniat, 538 So.2d at 214. The statute in question here is also part of that body of law and should be considered to regulate insurance and fall under the saving clause.
In conclusion, while ERISA does apply to this case because it deals with an "employee benefit plan," a state law cause of action still exists because La.R.S. 22:657 is not preempted by ERISA. The plaintiff therefore should have a claim for penalties and attorney's fees and should be allowed a jury trial on these issues. I would affirm the Court of Appeal's decision.
*543 [EDITOR'S NOTE:]
NOTES
[1] 29 U.S.C. § 1144(a).
[2] 29 U.S.C. § 1144(b)(2)(A).
[3] 29 U.S.C. § 1144(b)(2)(B).
[4] The court noted that the apparent clarity of the preemption sections on their faces is deceiving. The court stated, "... while the general preemption clause broadly preempts state law, the saving clause appears broadly to preserve the States' lawmaking power over much of the same regulation. While Congress occasionally decides to return to the States what it has previously taken away, it does not normally do both at the same time." 105 S.Ct. at 2389.
[5] The McCarran-Ferguson Act provides, in pertinent part: "[t]he business of insurance, and every person engaged therein, shall be subject of the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a).
[6] Taylor v. Blue Cross/Blue Shield of New York, 684 F.Supp 1352 (E.D.La.1988); Sublett v. Premier Bancorp Self Funded Medical Plan, 683 F.Supp 153 (M.D.La.1988); Rasmussen v. Metropolitan Life Ins. Co., 675 F.Supp. 1497 (W.D.La. 1987).
[7] At the time the events involved in Soniat took place, La.R.S. 22:213(B)(7) provided: "Cancellation: the insurer may cancel this policy at any time by written notice delivered to the insured, or mailed to his last address as shown by the records of the insurer, and shall refund the pro rata unearned portion of any premium paid. Such cancellation shall be without prejudice to any claim originating prior thereto ..." (Emphasis added).
[8] In fact, as an example of a law which regulates aspects of transacting the business of insurance, the Court in Metropolitan Life referred to laws regulating claims practices. 105 S.Ct. at 2383, n. 2.