United States Court of Appeals,

Fifth Circuit.

No. 92-4413.

James M. TINGLE, Sr. and Yvette Cecile Tingle, Plaintiffs-Appellees,

and

Lafayette General Medical Center, Intervenor-Plaintiff-Appellee, Cross-Appellant,

v.

PACIFIC MUTUAL INSURANCE CO., Defendant-Appellant, Cross-Appellee.

July 23, 1993.

Appeals from the United States District Court for the Western District of Louisiana.

Before WISDOM and DUHÉ, Circuit Judges, and DOHERTY[1], District Judge.

WISDOM, Circuit Judge:

In this case, the plaintiffs/appellees, James M. Tingle, Sr. and his wife, Yvette Cecile Tingle, sued to recover medical expenses under a health insurance policy provided through Tingle's employer. When Tingle's wife suffered injuries to her back, Tingle filed a claim for her medical expenses with his insurance company, Pacific Mutual Insurance Company ("Pacific"), the defendant/appellant. Pacific responded by notifying Tingle that his policy had been retroactively cancelled based on its discovery that he had misrepresented his wife's medical history on his insurance application. Tingle filed suit in state court to recover under his insurance policy. Pacific removed the case to the Western District of Louisiana where the case was tried to the court. At trial, the district court applied Louisiana law and concluded that Tingle was entitled to recover under the policy. We hold that the Employee Retirement Income Security Act ("ERISA")[2] preempts state law in this case. Therefore, we reverse and remand with instructions to the district court to apply federal law instead of Louisiana law.

---

[1]District Judge of the Western District of Louisiana, sitting by designation.

[2]Employee Retirement Income Security Act of 1974. 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.*

I.

In September 1987, Tingle was employed by Coastal Tubular Services ("Coastal"). Coastal maintained a group health care policy for its employees and their families. When Coastal failed to pay its insurance premiums, causing its policy to lapse, Pacific supplied the replacement policy. Coastal informed its employees that there would be no lapse in their coverage.

On September 3, 1987, Coastal summoned all of its employees from their jobs to meet with Coastal's insurance agent.[3] The agent gave each of the employees a Pacific enrollment form to complete and waited about fifteen minutes to collect the forms. The form required the employees to answer questions regarding their medical histories and their covered family members' medical histories. Pacific agreed to provide health insurance to Tingle and his wife based on this application.

In April 1988, Mrs. Tingle injured her back while attempting to pull on her girdle. When she saw her doctor three days later, he admitted her to Lakewood Hospital. Because the hospital was unable to treat her, it transferred her to Lafayette General Medical Center ("Lafayette General"). There she was found to have a herniated disc, not brought on by her previous back condition. She was operated on to correct this condition. Mrs. Tingle was hospitalized again on two separate occasions because of complications arising from the surgery. Pacific pre-approved each separate treatment. The total cost of Mrs. Tingle's treatments amounted to $71,300. Tingle filed a claim for these costs with Pacific.

When Pacific received Tingle's claim for these expenses, it investigated Mrs. Tingle's medical history and discovered several discrepancies between her medical history and the information Tingle had provided on his enrollment form. Pacific denied Tingle's claim and retroactively cancelled his policy based this discovery. Tingle filed suit in state court to recover under his policy. Pacific removed the case to the Western District of Louisiana under 29 U.S.C. § 1132(e) and (f) (ERISA) and 28 U.S.C. § 1331. The Tingles executed an assignment of health care benefits in favor of Lafayette General, which intervened at trial.

_____

[3]This agent was not an employee of Pacific Mutual. He was an independent insurance broker licensed to sell Pacific insurance.

The district court found that Tingle had misrepresented his wife's medical history on his enrollment form. Mrs. Tingle was a borderline diabetic and had continuing back problems. Yet, when asked whether or not Tingle or his wife suffered from any form of diabetes or back or spine disorder, Tingle answered in the negative to both of these questions. In addition, he failed to mention that his wife suffered from obesity. At trial, Tingle testified that he thought his wife was taking medication to avoid becoming a diabetic; thus, he did not believe she was diabetic. Further, he stated that he thought her previous back problems had been merely the result of pulled muscles; hence, he did not believe that they constituted a "disorder". Tingle also testified that he overheard Coastal's insurance agent telling another Coastal employee to report only major surgeries and illnesses. Based on this testimony, the district court found that Tingle did not have the actual intent to deceive Pacific when he made the misrepresentations.

The district court held that ERISA did not preempt the applicable state law. Consequently, interpreting La.R.S. 22:619 to require an actual intent to deceive in order to bar recovery, the district court concluded that Pacific was liable on the policy in spite of Tingle's misrepresentations. The district court entered judgment in favor of the Tingles and Lafayette General for the $71,300 in medical expenses and for reasonable costs but not attorneys' fees.

Pacific appeals the court's award allowing recovery under the policy and Lafayette cross appeals the court's decision to deny attorneys' fees.

II.

Pacific argues that ERISA preempts the otherwise applicable Louisiana law in this case. We agree. As a general rule, ERISA preempts any state law that relates to an employee benefit plan.[4] However, ERISA's "insurance saving clause" expressly exempts state laws that regulate insurance

---

[4] 29 U.S.C. § 1144(a). This section provides: "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975."

from preemption.[5] The district court held that La.R.S. 22:619 is exempt from ERISA preemption because it falls within the insurance savings clause. We disagree.

In *Metropolitan Life Insurance Co. v. Massachusetts,*[6] the Supreme Court enumerated the requirements a statute must meet to fall within the ERISA insurance savings clause. The Court took a two-pronged approach. First, the court determined whether the statute in question fitted the common sense definition of insurance regulation. Second, it looked at three factors: (1) Whether the practice (the statute) has the effect of spreading the policyholders' risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry.[7] If the statute fitted the common sense definition of insurance regulation and the court answered "yes" to each of the questions in the three part test, then the statute fell within the savings clause exempting it from ERISA preemption.[8]

In *Metropolitan Life,* the Court considered a Massachusetts statute that mandated insurers to include minimal mental health care benefits in all policies issued to Massachusetts residents.[9] The Court held that ERISA did not preempt this statute because the statute fell within the insurance savings clause. The Court found that the statute was directed solely to the insurance industry; it spread the risk of mental health care costs among all policyholders in the state; and it formed an

---

[5]29 U.S.C. § 1144(b)(2)(A). This section provides: "Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."

[6]471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

[7]*Id.* at 743-44, 105 S.Ct. at 2391. The Court sought guidance from federal jurisprudence interpreting the phrase "business of insurance" as used in the McCarran-Ferguson Act, 15 U.S.C. § 1012(a). *See also Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 48-49, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987).

[8]*Id.* 471 U.S. at 740-743, 105 S.Ct. at 2389-2391.

[9]*Id.* at 729, 105 S.Ct. at 2383. The Massachusetts statute provided: "Any blanket or general policy of insurance ... or any policy of accident and sickness insurance ... or any employees' health and welfare fund which provides hospital expense and surgical expense benefits and which is promulgated or renewed to any person or group of persons in this commonwealth ... shall, provide benefits for expense of residents of the commonwealth covered under any such policy or plan, arising from mental or nervous conditions as described in the standard nomenclature of the American Psychiatric Association....".

integral part of the insurer-insured relationship. Specifically in reference to the risk factor, the Court reasoned that because the statute caused the cost of mental health care to be shared by all policyholders in the state, it met the risk spreading factor.[10] In contrast, in *Pilot Life,* the Supreme Court held that ERISA preempted the state law at issue (the Mississippi common law of bad faith and tortious breach of contract) in part because it did not serve to spread the risk.[11] The Court stated that "[u]nlike the mandated-benefits law at issue in *Metropolitan Life,* the Mississippi common law of bad faith does not effect a spreading of policyholder risk".[12]

The statute at issue in the instant case, La.R.S. 22:619(B), provides:

> In any application for life or health insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity or any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

Pacific contends that this statute does not act to spread policyholder risk. Thus, it argues, the statute is preempted by ERISA. We agree. Unlike the mandated benefits statute in *Metropolitan Life,* the instant statute does not spread the cost of health care among the policyholders in the state. Although the statute does shift the burden of innocent misrepresentations (the legal risks) onto the insurer, it does not spread the risk of insurance (health) coverage for which the parties contracted.[13] Thus, the

---

[10]*Id.* at 743, 105 S.Ct. at 2391.

[11]*Pilot Life,* 481 U.S. at 50, 107 S.Ct. at 1554. Mississippi law allows the recovery of punitive damages in insurance contract actions where the insurer acted with arbitrarily an in bad faith in denying a claim for benefits

[12]*Id.* The state law at issue in *Pilot Life* failed other prongs of the *Metropolitan Life* test in addition to failing to spread the risk. Thus, the Court's holding that ERISA preempted the state law is grounded on more than one defect.

[13]*See Cramer v. Association Life Ins. Co.,* 569 So.2d 533, 537 (La.1990), "As we appreciate the term "spreading of risk" in the context of an insurance policy, the risk focused upon is that risk for which the insurance company has specifically contracted to reimburse the insured. In *Union Life Ins. Co. v. Pireno,* 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982), the Supreme Court interpreted the phrase "spreading of policyholder risk" in the context of the McCarran-Ferguson Act. The Court stated, "[t]he transfer of risk from insured to insurer is effected by means of the contract between the parties—the insurance policy—and that transfer is complete at the time that the contract is entered." The Court went on to note, "... the fundamental principle of insurance [is] that the insurance policy defines the scope of risk assumed by the insurer from the insured." Thus, when looking to see if a particular practice [statute] acts to "spread the risk," we must focus upon the actual risks that were transferred from the insured to

statute is more akin to the Mississippi law at issue in *Pilot Life,* which defined the criteria necessary for an insured to collect punitive damages from an insurer. Although the statute fits the common sense definition of insurance regulation, it fails to satisfy at least one prong of the three part *Metropolitan Life* test[14]. Thus, the statute does not fall within the ERISA insurance savings clause and is, therefore, preempted by ERISA.

Tingle argues that because there is little or no federal common law developed in this area and ERISA is silent concerning misrepresentation, this type of state law is what the ERISA preemption exception was intended to preserve. This argument entirely overlooks the *Metropolitan Life* holding. Moreover, in *Pilot Life,* the Court noted that Congress intended that "a federal common law of rights and obligations under ERISA-regulated plans would develop ..." with the passage of ERISA.[15]

The only case offered by Tingle to support his position actually supports Pacific's argument. In *Soniat v. Travelers Ins. Co.,*[16] the Louisiana Supreme Court considered whether La.R.S. 22:213(B)(7) came under ERISA's insurance savings clause exempting it from ERISA preemption. At the time the case was decided, the statute provided in pertinent part:

> Cancellation: ... [When the insurer cancels a policy], [s]uch cancellation shall be without prejudice to any claim originating prior thereto.

The Court held that the statute fitted within the savings clause and therefore, was not preempted by ERISA. Although the Court listed the *Metropolitan Life* factors and made a cursory finding that the statute in question satisfied each of the factors[17], it incorrectly relied on the statute's presence in Louisiana Insurance Code to conclude that it "regulated insurance" and thus fell within the savings

---

the insurer and determine if the practice [statute] acts to alter the contractual apportionment of those risks.

[14]Pacific argues that the statute also does not form an integral part of the insurer-insured relationship. Because we hold that the statute fails the risk spreading factor, we need not address this argument.

[15]*Pilot Life,* 481 U.S. at 56, 107 S.Ct. at 1557.

[16]538 So.2d 210, 214 (La.1989).

[17]*Id.* at 214, n. 9.

clause.[18] Tingle relies on this reasoning to argue that because the statute in the instant case is also a part of the Louisiana Insurance Code, it too should fall within the insurance savings clause. Although this Court subsequently held that La.R.S. 22:213(B)(7) fell within the savings clause and was not preempted by ERISA, agreeing with the final outcome in *Soniat,* it did so based on the *Metropolitan Life* factors, not the mere fact that the statute was part of Louisiana's Insurance Code.[19] Further, the *Soniat* statute, unlike the instant statute, did in fact spread the risk of health care coverage. It was designed to force insurers to provide coverage to all policyholders for medical expenses stemming from illnesses the insured contracted (such as cancer as in *Gahn*)[20] while under coverage of an insurance policy. In effect, the statute acted to spread the risk of these illnesses.

Moreover, this Court has held before that the mere fact that a statute is part of a comprehensive state insurance code will not exempt it from preemption. In *Ramirez v. Inter-Continental Hotels,*[21] the Court held that ERISA preempted a Texas Insurance Code provision that furnishes a private right of action to persons injured by unfair methods of competition and deceptive practices in the insurance industry.[22] The Court noted that although the statute was arguably directed to the insurance industry, it failed to satisfy the other two factors. It did not transfer or spread policyholder risk and it did not form an integral part of the insurer relationship. Thus, in spite of the statute's presence in the state insurance code, it did not fit the insurance savings clause's definition of "regulating insurance" and was therefore preempted by ERISA.

Even were we to look to Louisiana law for guidance, we would not reach Tingle's suggested conclusion. One year after the Louisiana Supreme Court rendered the *Soniat* decision, it changed

---

[18]*Id.* at 214.

[19]*See Gahn v. Allstate Life Insurance Company,* 926 F.2d 1449, 1454 (5th Cir.1991).

[20]*Id.* at 1450.

[21]890 F.2d 760 (5th Cir.1989).

[22]*Id.* at 763-64; *see also Hansen v. Continental Ins. Co.,* 940 F.2d 971 (5th Cir.1991). (In this case, the statute at issue was part of the Texas Insurance Code. In spite of this fact, the Court held that ERISA preempted it.).

its approach. In *Cramer v. Association Life Ins. Co.,*[23] the Court applied the *Metropolitan Life* factors and concluded that a different provision of the Louisiana Insurance Code failed to satisfy the test and was therefore preempted by ERISA.

Tingle urges us to apply the faulty reasoning relied upon in *Soniat* to find that ERISA does not preempt the statute before us in the instant case. In the light of the overwhelming precedent to the contrary, we decline to do so.

The rule in this circuit and the trend in other courts of appeals requires the satisfaction of the *Metropolitan Life* test to avoid preemption.[24] The Eleventh, Sixth, Tenth, and Eighth Circuits have all held that a statute's failure to satisfy one or more of the *Metropolitan Life* factors excludes it from the ERISA savings insurance clause.[25] Thus, all three factors must be met to avoid ERISA

---

[23]569 So.2d 533 (La.1990).

[24]*Ramirez,* 890 F.2d at 762-63.

[25]*Anschultz v. Connecticut General Life Ins. Co.,* 850 F.2d 1467 (11th Cir.1988) (The Court held that a Florida statute that provided specific civil remedies to insureds for alleged breach of insurance contracts was preempted by ERISA. The Court held that it fell outside the savings clause because it failed to meet two of the three factors: it did not act to spread the risk, and it was not an integral part of the parties relationship. The Court noted that the statute did not purport to regulate the content of the policies but rather to regulate breach for any type of insurance contract. The fact that the statute was part of the Insurance Code was held to be merely evidence that one of the three factors had been satisfied (the direct regulation of the insurance industry)).

McMahan v. New England Mut. Life Ins. Co., 888 F.2d 426, 428-30 (6th Cir.1989) (The Court held that Kentucky case law that holding that ambiguous terms in an insurance contract are to be construed against the insurer was preempted by ERISA. The Court applied the three part test and found that law did not spread policyholders' risk but rather forces the insurer to bear the legal risks associated with ambiguous policy language. Further the Court noted that the law was not aimed directly at the insurance industry because it derived from general state law.).

Kelley v. Sears, Roebuck and Co., 882 F.2d 453 (10th Cir.1989) (The Court held that a Colorado statute which defines and prohibits unfair or deceptive practices in the insurance industry was preempted by ERISA. The Court held that the statute failed the three part test in spite of the fact that it was directed towards the insurance industry. The Court noted that the statute did not spread policyholder risk and it was not an integral part of the parties relationship because it did not control the substantive terms of the policies.).

Brewer v. Lincoln Nat. Life Ins. Co., 921 F.2d 150 (8th Cir.1990), *cert. denied,* --- U.S. ----, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991) (The Court held that a Missouri law requiring that any ambiguities in insurance contracts be construed against the insurer was preempted by ERISA. The Court relied on *McMahan,* and stated that this law did not act

preemption.

Resolution of this issue requires us to determine if each of the factors has been satisfied. Because we hold that the statute does not spread the risk, we reverse the district court's decision and remand for the court to decide the case using federal law. Having decided the case based on this factor, we need not address Pacific arguments pertaining to the other two *Metropolitan Life* factors. We are aware of the dearth of federal law addressing this issue. However, this is not a legitimate reason for applying state law where ERISA would otherwise act to preempt it.[26]

Because we reverse the district court's award, we do not address the appellee's request for attorneys fees.

III.

For the foregoing reasons, we REVERSE and REMAND with instructions to the district court to apply federal law in resolving this case.[27]

---

to spread policyholders' risk but rather put the entire risk onto the insurers. Further it held that although the rule had evolved into a specific insurance industry rule, it had been derived from general state contract principles and was therefore not directed at the insurance industry alone.).

[26]*But see United States ex rel. Canion v. Randall & Blake,* 817 F.2d 1188, 1193 (5th Cir.1987) (Where this Court stated that where federal law is applicable, yet, is silent, the court may refer to state law as an appropriate source of guidance. The court is not, however, bound to apply state law.).

[27]The appellants filed a motion to certify a question of state law to the Louisiana Supreme Court. This motion was carried with the case. Because we hold that ERISA preempts the relevant state law in this case, we deny the appellants' motion.