Joyce SMITH, Appellee,

v.

CITIZENS STATE BANK OF HUGO, Oklahoma, Appellant.

No. 64314.

Court of Appeals of Oklahoma, Tulsa Division.

Oct. 21, 1986.

Rehearing Denied Dec. 11, 1986.

Certiorari Denied Jan. 27, 1987.

Hack Welch, Vester Songer, Hugo, for appellee.

Lon Kile, Kile and Rabon, Hugo, for appellant.

BRIGHTMIRE, Presiding Judge.

The thawing of frozen assets was in a sense the object of this lawsuit between a depositor and her bank.

More specifically, the issue raised by the defeated bank is whether the law and evidence supports the jury verdict and judgment in favor of plaintiff for substantial compensatory and punitive damages.

We hold it does and affirm.

I

On July 30, 1982, the bank customer, Joyce Smith, entered into a thirty-six month installment loan agreement with Citizens State Bank of Hugo, Oklahoma, to finance the purchase of a 1980 model pickup truck for her boyfriend. Monthly payments were due on the 30th of each month beginning in August, 1982. On November 30, 1982, she borrowed another $505 from the bank to purchase inventory for the dress shop she operated from her residence. The second loan was a "single-payment note" due May 30, 1983.

Although the bank usually received the truck payments late, they were always paid. At least, that is, until the February 1983 payment came due. Smith and her boyfriend broke up and the February payment was not made. On March 10 plaintiff called her loan officer, Charles McLemore, and asked if it would hurt her credit if she let the bank repossess the truck. He said it would not and that he thought the truck could be sold for enough to satisfy the balance due. So she asked him to pick up the pickup because she could no longer afford to make the payments. Mr. McLemore and another bank employee went to Smith's trailer house that afternoon and were told that her former boyfriend had the truck. McLemore knew where to find him and got the truck from him early that evening.

On March 12 Smith received a letter from the bank giving her until March 21 to become current on the loan, after which they would sell the truck to satisfy the debt and notify her of any deficit. How-

ever, on Saturday, March 17, Smith was notified by a merchant that the first of four checks had been dishonored by the bank. Knowing that she had sufficient funds to cover her outstanding checks, she called the bank on March 19, the next business day, and was told by Mr. McLemore that the account balance of $461.37 had been "frozen" but if she would deposit $300 the account would remain active and all outstanding checks would be honored. Testimony was conflicting on some of the details at this point. Smith said she was told that a $1000 hold had been placed on her account but with the $300 deposit the hold would be reduced to $300, leaving the $461.37 for outstanding checks. McLemore says he told her the lien was for $461.37 and the $300 deposit was to cover unpaid checks. Smith borrowed the money from her brother and made the $300 deposit on March 21.

On May 27 Smith heard through the grapevine that the truck had been sold and called McLemore for more details. She was told that the sale price of the truck had been $159.47 short of the loan balance, that the single-payment note had been declared due—as the note gave the bank a right to do if plaintiff defaulted on any obligation to the bank—and that the $324.73 balance in her checking account had been applied to the amount due on the single-payment note, leaving a net unpaid balance of $408.69.

On July 20, 1983, Smith filed this action against the bank seeking damages for having to borrow money, for conversion of her funds, for injury to her reputation, for mental pain and suffering, and punitive damages for wrongfully freezing the checking account and causing four checks to be dishonored. Trial began April 15, 1983, and on April 17, 1983, the jury returned a verdict for Smith for $30,324.73 actual damages and $30,000 punitive damages. From judgment rendered on the verdict, the bank appeals.

## II

The bank's first "proposition" is actually a dangling conclusion that the "bank had a lien on the plaintiff's checking Account for the balance owing on the installment note." As a general statement it is, of course, true. It is not, however, responsive to the issues raised in plaintiff's petition or by the evidence. The best we can make of it, bank's argument is that since it had a statutory right to place a "banker's lien" on Smith's checking account, it cannot be estopped by its official's actions from asserting such liens or otherwise be guilty of any wrongdoing by enforcing them. Or to put it another way, a finding that the actions of the bank official and his representations to Smith are inconsistent or incompatible with the exercise of its banker's lien cannot operate as a waiver of bank's rights or as an estoppel to, for instance, "freeze" her checking account.

This, however, is not the law. The bank can, by its conduct or statements, waive its lien rights. Beyond this a bank has a duty to deal honestly and fairly with its depositors and to do otherwise can subject it to the principles of estoppel, as well as a charge of bad faith breach of contract.[1] A failure to perform such duty is actionable and may form the basis for the depositor recovering compensation for all consequential detriment as well as punitive damages if the wrongful conduct is found to be grossly negligent, oppressive, wanton, or fraudulent. 23 O.S.1981 § 9; *Slocum v. Phillips Petroleum Co.,* 678 P.2d 716 (Okl.1983).

Though somewhat conflicting the evidence here is quite sufficient to support the jury's finding of wanton, oppressive, and deceptive wrongdoing by the bank official causing detriment to plaintiff. The

---

1. One basis for estoppel, for example, is deceit. *See Agee v. Travelers Indemnity Co.,* 264 F.Supp. 322 (1967), applying Oklahoma law. Bad faith breach of a fiduciary duty (such as exists between bank and depositors) will support puni-

tive damages, *McCarroll v. Reed,* 679 P.2d 851 (Okl.App.1983), as will bad faith breach of contract. *Timmons v. Royal Globe Ins. Co.,* 653 P.2d 907 (Okl.1982).

jury could and evidently did find that (1) plaintiff turned the truck over to the bank based on McLemore's assurances that her credit would not be adversely affected when he knew the fact to be otherwise; (2) the March 11 letter gave her until March 21 to "pay [the] account in full" and based on that she believed that she had at least until March 21, if not until a deficiency resulted from sale of the truck, before she would be in default, which turned out to be false; (3) she was told she would be notified of any deficiency and given an opportunity to pay, another false statement; (4) the "freeze" on her account was without notice and was premature and as a result of the freeze her checks were wrongfully dishonored, causing embarrassment in the community, damage to her credit, and mental distress; (5) had she been aware of the bank's intentions she would have kept the truck and sold it herself; and (6) she relied to her detriment upon the representations of McLemore and has suffered damages as a result.

Such facts are sufficient to form the basis of finding deceptive practices on the part of the bank. This is deceit and deceit is a species of fraud. Bank's first contention is therefore without merit.

### III

For its second proposition the bank states that the "evidence did not support an award for either actual or punitive damages."

Its supporting argument does not challenge the compensatory damages in terms of the evidentiary sufficiency or excessiveness of the award. Its argument is general in nature and is aimed at showing that allegations of the petition were inadequate in form and that the verdict forms were inappropriate. The bank's major contention is that its conduct was "neither extreme or outrageous", and for this reason there could be no recovery for "emotional distress." The contention is that since the bank was exercising its lien rights it can be liable only for the "actual damages" it causes by dishonoring checks "through mistake." The bank does not disclose in its brief what it perceives to be "actual damages" or in what way the evidence was insufficient, except with regard to its "outrage" argument we referred to earlier.

We do not consider it necessary to go into the bank's outrage concept because it was not a pleaded issue nor was it an issue the jury was instructed to pass on. The thrust of plaintiff's complaint and evidence is that the bank official intentionally deceived her and pursued a course of oppressive conduct in reckless disregard of plaintiff's rights and interests which caused her considerable emotional distress, embarrassment, aggravation, loss of time and damaged credit. The trial court instructed on this theory as well as the bank's lien right and innocent mistake defenses.

We can see nothing in the bank's argument that provides us with a legal basis for interfering with the jury's verdict.

Affirmed.

RAPP and STUBBLEFIELD, JJ., concur.