**Stephanie LEWIS, Plaintiff,**

v.

**AETNA U.S. HEALTHCARE, INC., Defendant.**

**No. 99–CV–104–H(M).**

United States District Court,
N.D. Oklahoma.

Oct. 20, 1999.

## ORDER

HOLMES, District Judge.

This matter comes before the Court on Defendant's notice of removal (Docket # 1) and Defendant's motion to dismiss (Docket # 8). This case was originally filed on December 21, 1998, in the District Court for Tulsa County, Oklahoma. Defendant undertook to remove the case to federal court by filing a notice of removal on February 5, 1999. Defendant filed its motion to dismiss on February 26, 1999. A hearing was held in this matter on July 8, 1999.

### I

To prevail on a motion to dismiss, a defendant must establish that there is no set of circumstances under which the plaintiff would be entitled to relief. *See Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Ash Creek Mining Co. v. Lujan,* 969 F.2d 868, 870 (10th Cir.1992). Accordingly, for purposes of resolving the issues here, the Court accepts as true the allegations in Plaintiff's original Petition. *See Ash Creek Mining,* 969 F.2d at 870.

Plaintiff's Petition states two causes of action arising from Defendant's prolonged refusal to pay life insurance benefits due Plaintiff upon the death of her common law spouse. The first cause of action asserts that Defendant's failure to perform its obligations to Plaintiff under the policy constituted a breach of contract. The second cause of action, for bad faith, alleges that "Defendant's unreasonable delay in paying life insurance benefits constitutes a breach of the covenant of good faith and fair dealing," and seeks punitive as well as compensatory damages.

For purposes of the instant motion, the Court also accepts as admitted each of the eight requests for admissions that were served on Defendant contemporaneously with Plaintiff's Petition and never answered. *See* Okla. Stat. Ann. tit. 12, § 3236 (West 1996). These requests for admission establish that, at the time of his

Joseph F. Clark, Jr., Richard Edward Warzynski, Layon Cronin & Kaiser, Tulsa, OK, for plaintiff.

Richard Casey Cooper, Sheila Marie Powers, Boesche McDermott & Eskridge, Tulsa, OK, for defendant.

death, Plaintiff's common law spouse was covered by a policy issued by Defendant, that Defendant denied coverage erroneously and eventually paid Plaintiff the benefits due her under the policy.

In its notice of removal, Defendant asserts that because Plaintiff states in her Petition that the dependent life insurance policy at issue in this action was part of an employee benefit package, Plaintiff's claims of breach of contract and bad faith refusal to pay benefits under the policy are governed by the Employment Retirement Insurance Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Based on this assertion, Defendant argues that Plaintiff's action raises a question of federal law and is therefore removable to federal court under 28 U.S.C. § 1441(a). Furthermore, in its motion to dismiss, Defendant reiterates its assertion that ERISA applies to the insurance policy at issue and confirms that it did in fact eventually pay Plaintiff the benefits due her under the policy.

Plaintiff claims that Defendant is liable to Plaintiff for its failure to pay Plaintiff promptly the death benefits due her under the subject life insurance policy. As noted above, Plaintiff asserts one cause of action for breach of contract and a second cause of action in tort for breach of the implied-in-law covenant of good faith and fair dealing under *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okla.1977). In her response to Defendant's motion to dismiss, Plaintiff asserts first that this plan is not covered by ERISA and second, even if covered by ERISA, her claims avoid preemption under the statute's saving clause, 29 U.S.C. § 1144(b)(2)(A).

█ State laws that "relate to any employee welfare benefit plan" are generally preempted by ERISA. 29 U.S.C. § 1144. ERISA's "relate to" preemption is conspicuous for its breadth. *See FMC Corp. v.*

*Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990); *Straub v. W. Union Tel. Co.*, 851 F.2d 1262, 1263 (10th Cir.1988). Both of Plaintiff's causes of action relate to the alleged bad faith delay in paying a claim under her employer's group insurance coverage. The record is uncontroverted that Columbia Doctor's Hospital presented the dependent life insurance coverage at issue here as part of its benefits package for its employees. Thus, the policy qualifies as an "employee welfare benefit plan." *See* 29 U.S.C. § 1002(1) (1994). Plaintiff's claims against Aetna clearly relate to the plan. *See Peckham v. Gem State Mut. of Utah,* 964 F.2d 1043 (10th Cir.1992). Therefore, Plaintiff's claim that this plan is not subject to ERISA at all is without merit. Since Plaintiff does not assert that her contract cause of action is nevertheless exempt under the saving clause, her claim for breach of contract clearly must fail, because ERISA limits relief to benefits due under the policy, which have been paid in this case.[1] Accordingly, the only remaining issue is whether, as Plaintiff argues, her tort claim under *Christian* avoids preemption by falling within ERISA's statutory saving clause. That clause states, in applicable part: "Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."[2] 29 U.S.C. § 1144(b)(2)(A) (1994). Plaintiff argues that a *Christian* tort action constitutes enforcement of a state rule that "regulates insurance" under the test for construing the saving clause recently announced by the United States Supreme Court in *UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999).

---

1. At the hearing in this case on July 8, 1999, Plaintiff effectively conceded that her breach of contract claim was preempted under ERISA. As a result, the briefs, the supplemental briefs, and the arguments in this matter have focused solely on Plaintiff's tort cause of action.

2. "State law" is defined to include "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1).

The question presented is whether ERISA preempts a *Christian* cause of action, or whether, in light of *UNUM*, such a cause of action "regulates insurance" and therefore avoids preemption pursuant to ERISA's saving clause, 29 U.S.C. § 1144(b)(2)(A). Under the allegations accepted as true here, the issue is whether an insurance company may refuse to pay a rightful claim in bad faith, thereby forcing the claimant to hire an attorney and incur unnecessary costs, but ultimately pay the benefits due under the policy, and finally invoke ERISA preemption and its statutory limitations on recovery to the benefits payable under the policy, thus avoiding all accountability both to the insured and to the State of Oklahoma for its conduct. The Court finds that the history, express terms, and consistent application of the *Christian* cause of action compel the conclusion that the purpose and effect of this State rule is to "regulate insurance" as that phrase has been defined by the United States Supreme Court in *UNUM*. As a result, Plaintiff's tort cause of action is not preempted by ERISA and may proceed under Oklahoma law.

3. Provisions of the Insurance Code that relate to the general prohibition of unfair or deceptive acts by insurance companies include Okla. Stat. tit. 36 §§ 1201 and 1203. Section 1201 declares that the legislative purpose of Article 12 is to regulate trade practices in the insurance industry and pursuant to that purpose, § 1203 prohibits unfair or deceptive acts or practices in that industry.

4. The Unfair Claims Settlement Practices Act, Okla. Stat. tit. 36 § 1250.1 *et seq.*, applies to all claims arising under insurance policies or contracts and enumerates various unfair claims settlement practices, including "not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear;" and "compelling, without just cause, policyholders to institute suits to recover amounts due under its insurance policies or insurance contracts by offering substantially less than the amounts ultimately recovered in suits brought by them, when such policyholders have made claims for amounts reasonably similar to the amounts ultimately recovered." Okla. Stat. tit. 36 § 1250.5.

The Act provides for enforcement of the Act by the Insurance Commissioner, who is au-

II

To fully understand *Christian*, it is necessary first to understand its legal context by reviewing the relevant statutory provisions regulating insurance in Oklahoma. The Oklahoma statutes evidence a specific legislative policy against the bad faith failure to pay rightful claims. In particular, the Insurance Code, Okla. Stat. tit. 36 § 101 *et seq.*, contains several regulatory restrictions that are relevant to the issue of bad faith: Article 12 of the Insurance Code, entitled Unfair Practices and Frauds, regulates certain practices pertaining to the payment of claims generally,[3] as well as the failure to pay claims in violation of the Uniform Claims Settlement Practices Act;[4] Okla. Stat. tit. 36 § 1219 creates a private right of action if an insurer does not pay a valid claim within 60 days; Okla. Stat. tit. 36 § 3629 obligates an insurer to settle or reject a claim within 90 days of receiving a proof of loss; and Okla. Stat. tit. 36 § 4405(A)(8) requires a standard clause in each accident and health insurance policy pursuant to which insurers must pay claims promptly.[5]

thorized to receive and process individual complaints against insurers, cause investigation of insurers who do not meet the minimum standard of performance; and issue cease and desist orders to insurers directing them to stop unlawful practices. If the insurer refuses or fails to comply with such an order, the Commissioner is authorized to revoke or suspend the insurer's certificate of authority or to limit, regulate, and control the insurer's line of business or the insurer's writing of policy forms, to the extent deemed necessary to obtain the insurer's compliance with the order. *See* Okla. Stat. tit. 36 §§ 1250.10, 1250.13. The Act further authorizes the Commissioner to subject an insurer to civil penalties of up to five thousand dollars for each violation of the Act. *See* Okla. Stat. tit. 36 § 1250.14.

5. The Court notes that Okla. Stat. tit. 36 § 3629 and § 4405 formed the sole basis for a state law claim of bad faith that the Tenth Circuit determined to be preempted by ERISA in the pre-*UNUM* case of *Gaylor v. John Hancock Mutual Life Ins. Co.*, 112 F.3d 460 (10th Cir.1997).

■ It is settled law that Oklahoma does not recognize a private right of action for a violation of the Unfair Settlement Practices Act, Okla. Stat. tit. 36 § 1250.1 *et seq. See Gianfillippo v. Northland Casualty Co.,* 861 P.2d 308, 310 (Okla.1993); *Walker v. Chouteau,* 849 P.2d 1085 (Okla. 1993). However, the Insurance Code in general, and the Act in particular, reflect a clear State policy of regulating insurance in part by prohibiting the bad faith failure by insurers to pay promptly the rightful claims of insureds.

■ As discussed more fully below, the *Christian* court expressly referenced this legislative policy in holding that Oklahoma recognized the tort of breach of implied duty of good faith and fair dealing in an accident insurance policy. This tort has since been recognized with respect to all insurance policies. *See McCorkle v. Great Atl. Ins. Co.,* 637 P.2d 583, 588 (Okla.1981).

### III

The facts in *Christian* were relatively straightforward. The plaintiff purchased disability insurance and became permanently and totally disabled in an accident covered by the policy. The insurer refused to pay benefits and further refused to tell the insured why benefits were denied. The insured sued the insurer for breach of contract and sought maximum disability benefits plus interest. "Although [the insurer] refused to pay the claim and fully litigated the action, it became apparent during the trial that [the insurer] did not have, and had never had, a valid defense to [the insured's] claim." *Christian,* 577 P.2d at 900. The trial court held for the plaintiff. *See id.*

Thereafter, Mr. Christian filed a second action in tort for breach of the duty of good faith, seeking compensatory damages, damages for mental suffering and distress, punitive damages, as well as all attorney fees and litigation costs for the prior action.

In reversing the trial court's summary judgment in favor of insurer, the Oklahoma Supreme Court first described the question presented as "whether under Oklahoma law an insurance company may be subjected to liability in tort for a willful, malicious and bad faith refusal to pay a valid insurance claim." *Id.* at 900. The court observed that a growing number of jurisdictions had recognized a cause of action for bad faith refusal to pay benefits due under an insurance policy, noting that:

This is a distinct tort based upon an implied duty of the insurer to act in good faith and deal fairly with its insured. This duty is not consensual, it is imposed by law. Breach of the duty sounds in tort, notwithstanding that it also constitutes a breach of contract, and plaintiff insured may recover consequential and, in a proper case, punitive, damages. The essence of the cause of action is bad faith.

*Id.* at 901.

The court then discussed three sources of legal authority for this tort: the Oklahoma Insurance Code, and two California cases, *Fletcher v. W. Nat'l Life Ins. Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970), and *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). Quoting from *Fletcher,* the *Christian* court emphasized that the tort arises out of the unique relationship between insured and insurer, stating:

In *Fletcher, supra,* the court discussed the special relationship between an insurer and its insured which gives rise to the duty of good faith and fair dealing. The court observed that the industry has a quasi-public nature, that it involves the public interest and for that reason it is largely governmentally regulated. The consumer has no bargaining power and no means of protecting himself from the kinds of abuses set forth in appellant's petition. The following discussion of this special relationship between an insurance company and its insured, is relevant here:

" * * * To some extent this special relationship and these special duties take cognizance of the great disparity

in the economic situations and bargaining abilities of the insurer and the insured. * * * To some extent the special relationship and duties of the insurer exist in recognition of the fact that the insured does not contract '. . . to obtain a commercial advantage but to protect (himself) against the risks of accidental losses, including the mental distress which might follow from the losses. Among the considerations in purchasing . . . insurance, as insurers are well aware, is the peace of mind and security it will provide in the event of an accidental loss . . .' *These considerations are particularly cogent in disability insurance. The very risks insured against presuppose that if and when a claim is made, the insured will be disabled and in strait financial circumstances and, therefore, particularly vulnerable to oppressive tactics on the part of an economically powerful entity.*" (emphasis in original)

577 P.2d at 902 (quoting *Fletcher* ).

The *Christian* court next emphasized the extensive statutory regulation of insurance in Oklahoma, stating:

We have recognized the quasi-public nature of insurance companies and the need to subject companies to state control for the protection and benefit of the public. *Oklahoma Benefit Life Assoc. v. Bird,* 192 Okla. 288, 135 P.2d 994 (1943). *Perusal of our insurance code, Title 36, Oklahoma Statutes, reveals the extensive government regulation of the industry in this state.* (emphasis added).

*Id.* at 902. In response to the insurer's argument that the measure of damages under general contract law limited recovery by the insured to the amount due and owing under the policy plus interest, the court concluded:

. . . we find the obligation of an insurer to its insured upon proper presentation of a valid claim under a disability policy, is not limited to the payment of money only.

*Our Insurance Code requires insurance companies to make immediate payment of claims.* Title 36 O.S.1971 s.4405(a)(8), requires the following provision to be included as a standard clause in all individual accident and health policies:

TIME OF PAYMENT OF CLAIMS: Indemnities payable under this policy for any loss * * * will be paid immediately upon receipt of due written proof of such loss.

*This statutory duty imposed upon insurance companies to pay claims immediately, recognizes that a substantial part of the right purchased by an insured is the right to receive the policy benefits promptly.* Unwarranted delay precipitates the precise economic hardship the insured sought to avoid by purchase of the policy.

While this provision would not deter an insurance company from refusing payment on a claim that it had reasonable cause to believe was factually or legally insufficient, *it does express the intent of our legislature to impose upon insurance companies an obligation to pay a valid claim on a policy promptly.* (emphasis added).

*Id.* at 903. The court continued: "[t]he obligation of an insurance company . . . on a disability policy is not for the payment of money only, it is the obligation to pay the policy amount immediately upon receipt of proper proof of loss or to defend in good faith and to deal fairly with its insured." *Id.* at 904.

Finally, the *Christian* court returned to the California common law to explain the scope of the duty that it had recognized as arising from the legislative policy underlying Oklahoma insurance law, quoting from *Gruenberg:*

[I]n the case before us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy. These are merely two different as-

pects of the same duty. That responsibility is not the requirement mandated by the terms of the policy itself—to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal *fairly and in good faith* with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing. (emphasis in original)

*Id.* (quoting *Gruenberg*, 108 Cal.Rptr. 480, 510 P.2d at 1037).

■ Thus, in *Christian*, the Oklahoma Supreme Court established a cause of action sounding in tort for a violation of the duty of good faith and fair dealing in an insurance contract, basing it in part on California common law and in part on the legislative policy expressed in the Oklahoma Insurance Code. The *Christian* court held:

We approve and adopt the rule that an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought. We do not hold that an insurer who resists and litigates a claim made by its insured does so at its peril that if it loses the suit or suffers a judgment against it for a larger amount than it had offered in payment, it will be held to have breached its duty to act fairly and in good faith and thus be liable in tort.

We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy

conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

577 P.2d at 904–5. As the discussion in the next section makes clear, the Oklahoma Supreme Court has since consistently limited this cause of action, based as it is on the State's statutory regulation of insurance, to the insurance industry.

## IV

■ Since deciding *Christian* in 1977, the Oklahoma Supreme Court has often explained and amplified the tort of breach of the implied covenant of good faith and fair dealing. A careful review of these cases dictates two conclusions: first, the *Christian* tort in Oklahoma arises out of the unique relationship between insured and insurer, and, second, as a result, the tort has never been extended beyond the insurance area.

## A

Four years after *Christian*, in *McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583 (Okla. 1981), the court extended the *Christian* cause of action to all types of insurance policies, even where the insurance was for an unascertained amount.[6] The court in *McCorkle* carefully reconsidered *Christian*, and concluded that it was necessary to protect the consumer, reasoning:

We believe that the purchaser of insurance does not contract to obtain a commercial advantage but to protect himself/herself against the risks of accidental losses and the mental stress which could result from such losses. Therefore, we think one of the primary

---

**6.** It is noteworthy that in its brief before the Oklahoma Supreme Court in *McCorkle,* the defendant insurer argued in part that "singl[ing] out insurance companies and impos[ing] tort liability [on them alone] for a breach of contract duty which is present in all contracts [is] a denial of ... equal protection under both the United States and Oklahoma Constitutions." 637 P.2d at 588.

reasons a consumer purchases any type of insurance (and the insurance industry knows this) is the peace of mind and security that it provides in the event of loss.

*McCorkle*, 637 P.2d at 588.

In *Lewis v. Farmers Ins. Co.*, 681 P.2d 67, 69–70 (Okla.1983), the court held that since a homeowner's action for bad faith sounded in tort, the statute of limitations for tort should apply, noting "[i]f the contract is merely the inducement which creates the occasion for the tort, the tort, not the contract, is the basis of the action." The court further stated:

> Tort liability may be imposed only if there is a clear showing that the insurer, in bad faith unreasonably withholds payment of the claim. A cause of action in tort arose when the insurer breached the implied duty to deal fairly and in good faith with its insured. We find that the homeowner's alleged cause of action is founded in tort, and that the two-year statute of limitations is applicable.

*Lewis*, 681 P.2d at 70.

■ Similarly, in 1988, the court held that the standard of proof necessary for punitive damages in an insurance bad-faith action was the same as with any other tort, citing as authority the Oklahoma punitive damage statute, Okla. Stat. tit. 23 § 9 (1981). *See McLaughlin v. National Benefit Life Ins. Co.*, 772 P.2d 383, 387 (Okla. 1988); *accord Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105 (Okla.1991).

■ In *Roach v. Atlas Life Ins. Co.*, 769 P.2d 158 (Okla.1989), *Christian* was extended to third-party beneficiaries, provided there exists a contractual or statutory relationship. The court stated that "[t]he failure to afford a cause of action for bad faith to the beneficiary of a life insurance policy would negate a substantial reason for the insured's purchase of the policy — the peace of mind and security which it provides in the event of loss." 769 P.2d at 161. *See also Townsend v. State Farm Mutual Auto. Ins. Co.*, 860 P.2d 236, 237 (Okla.1993) (permitting a passenger to bring a bad-faith action because of the statutory and contractual relationships arising out of an uninsured motorist policy). *Cf. Gianfillippo v. Northland Cas. Co.*, 861 P.2d 308, 310 (Okla.1993) (rejecting third-party beneficiary's action for bad faith because the liability insurance policy afforded no contractual or statutory relationship upon which to base a tort).

In 1992, the Oklahoma Supreme Court explicitly recognized the tort of bad faith breach of the covenant of good faith and fair dealing in the workers' compensation context. *See Goodwin v. Old Republic Ins. Co.*, 828 P.2d 431, 435 (Okla.1992). More importantly for purposes of the issues presently before this Court, this decision recited the step-by-step extension of the *Christian* cause of action to all kinds of insurance and set forth the statutory underpinnings for each such extension.[7]

**B**

An exhaustive study of the cases makes clear that the Oklahoma Supreme Court has at all times limited the *Christian* tort to insurance contracts. Recent cases have re-emphasized this limitation, notwithstanding the fact that at various times lower courts have entertained expanding the cause of action beyond insurance.

Since *Christian*, the Court of Civil Appeals has considered extending the tort for breach of the implied covenant of good faith and fair dealing beyond insurance on four occasions. *See R.J.B. Gas Pipeline Co. v. Colorado Interstate Gas Co.*, 813

7. The court stated, "We acknowledged that casualty insurance carriers may be subject to a bad faith action in *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okla. 1977) [disability insurance—Okla. Stat. tit. 36 § 707(1) ]; *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583 (Okla.1981) [fire insur- ance—Okla. Stat. tit. 36 § 707(11) ]; *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907 (Okla.1982) [aircraft insurance—Okla. Stat. tit. 36 § 707(11) ]; *Roach v. Atlas Life Ins. Co.*, 769 P.2d 158 (Okla.1989) [life insurance—Okla. Stat. tit. 36 § 707(1) ]." 828 P.2d at 433.

P.2d 14, 25 (Okla.Ct.App.1990) (declining to extend the duty of good faith and fair dealing to take-or-pay gas contracts); *RJB Gas Pipeline Co. v. Colorado Interstate Gas Co.*, 813 P.2d 1, 11–12 (Okla.Ct.App. 1989) (declining to allow a claim for tortious breach of contract based on the implied duty of good faith outside the insurance context, citing *Rodgers v. Tecumseh Bank*, 756 P.2d 1223 (Okla.1988), and the fear that holding otherwise would allow a prayer for punitive damage in every breach of contract action governed by Oklahoma law); *Smith v. Citizens State Bank of Hugo*, 732 P.2d 911, 913 n. 1 (Okla.Ct.App.1986) (holding that a banking agreement could support a bad-faith tort); *EKE Builders, Inc. v. Quail Bluff Assocs.*, 714 P.2d 604 (Okla.Ct.App.1985) (holding that a construction contract could support a bad-faith tort).

In contrast with the Court of Civil Appeals, the Oklahoma Supreme Court has steadfastly limited the *Christian* tort to insurance contracts, even when presented with the opportunity to expand the tort to other contexts. In 1985, the court appeared to consider extending the duty of good faith into the employment area. In *Hall v. Farmers Ins. Exchange*, 713 P.2d 1027, 1030, 1031 (Okla.1985), the court held that the implied covenant of good faith extends to a covenant not to resort wrongfully to the at-will termination clause, so that a principal may not unfairly deprive an agent of the fruits of his own labor. In *Hall*, however, the court never mentioned any extra-contractual duty; .rather, this was the covenant implied in all contracts to deal fairly and in good faith, and the damages at issue were contract damages only.

Two years later, in *Hinson v. Cameron*, 742 P.2d 549, 552, 554 (Okla.1987), the court clarified *Hall* and declined to impose on employers a legal duty not to terminate at-will employees in bad faith, explaining that although "*Hall* came to be perceived as creating a new cause of action" in favor of at-will employees, it did not in fact do so. In *Burk v. K–Mart Corp.*, 770 P.2d 24, 27–28 (Okla.1989), the court stated categorically that there is no implied covenant of good faith and fair dealing governing the employer's decision to terminate an at-will employee. The court then created a narrow public policy exception to the employment-at-will doctrine, thus establishing a new cause of action sounding in tort. *See id.* In *Collier v. Insignia Financial Group*, 981 P.2d 321 (Okla.1999), the court considered the scope of the *Burk* public policy tort and emphasized that the tort lies only in the employment context. Since this cause of action is not in any way based on *Christian*, cases from the employment area are inapposite.

In 1988, the Oklahoma Supreme Court expressly rejected any application of the *Christian* cause of action beyond insurance, holding that there could be no tortious breach in the commercial loan context. *See Rodgers*, 756 P.2d at 1226–1227. In limiting the tort, the court emphasized the inherent differences between insurance policies and commercial agreements, as well as the special relationship between insured and insurer that is lacking in the commercial loan context, stating:

> In the instant case, borrowers ask us to extend Christian to commercial loan agreements. *We decline to do so because of the inherent differences between insurance policies and commercial loan agreements.* An insurance policy, by its very nature, is an adhesion contract, ...
> The definitive characteristic of an adhesion contract is the weaker party has no realistic choice as to its terms.
> The facts of the instant case belie that this commercial loan agreement was an adhesion contract. The borrowers shopped around and came to the bank because it offered the most favorable interest rates, and in negotiating the contract the borrowers were successful in having a favorable term inserted into the printed form. Here we have arms'-length negotiating, a relatively equal bargaining capacity and no snares or traps for the unwary, quite unlike the circumstances surrounding the issuance of an insurance policy.

Furthermore, the purpose of an insurance policy is elimination of risk, an aspect wholly absent in the contract now before us. *The authority we relied upon in Christian imposed the implied-in-law duty of good faith and fair dealing on the insurer because of the special purpose for obtaining insurance:*

An insurer has a special relationship to its insured and has special implied-in-law duties toward the insured. To some extent this special relationship and *these special duties take cognizance of the great disparity in the economic situations and the bargaining abilities of the insurer and the insured.* To some extent the special relationship and duties of the insurer exist in recognition of the fact that the insured does not contract "... to obtain a commercial advantage but to protect [himself] against the risk of accidental losses ..."(citations omitted)

*Id.* at 1226 (emphasis added).

In *Beshara v. Southern Nat'l Bank,* 928 P.2d 280, 286, 288 (Okla.1996), a customer claimed that a bank had wrongfully placed a hold on his account. The court decided that a good faith tort claim should have been presented to the jury, recognizing that the plaintiff's claim of wrongful dishonor created a special situation, which goes beyond a contractual relationship. In order to prevail, however, the plaintiff was required to prove gross recklessness or wanton negligence. Significantly, *Beshara* made no reference to the *Christian* cause of action. More significantly, two months after *Beshara,* in *First Bank of Turley v. Fidelity & Deposit Ins. Co. of Maryland,* 928 P.2d 298, 307 n. 34 (Okla.1996), the court reaffirmed the proposition that *Christian* was limited to insurance contracts. There, the court rejected a comparative fault defense or tort of reverse bad faith, emphasizing once again that *Christian* was an insurance action only: "[t]he *Christian* cause of action, *crafted as it is from the insured/insurer relationship,* flows not so much from contract as it does from law that attaches a cluster of implied-in-law duties to the insurer/insured

status." *Id.* at 307 (emphasis added). In a footnote, the court declared *Rodgers* remains good law, stating that "[o]ur post-*Christian* jurisprudence supports the notion that a *Christian* bad-faith claim is founded on the parties' status-based relationship between the insurer and its insured." *Id.* at 307, n. 34.

Similarly, in *First Nat'l Bank & Trust Co. of Vinita v. Kissee,* 859 P.2d 502, 509–510 (Okla.1993), the court refused to extend *Christian* to the non-insurance context of banking. In fact, the court took pains to explain that its "seminal holding in *Christian*" does not apply to the relationship between a bank and its customer, and that it is reluctant "to extend *Christian* and its progeny beyond the insurance field." *Id.* The court concluded that the creditor-debtor, non-fiduciary relationship between a bank and its customer does not rise to the level of the "special relationship" between insurers and their insureds. *Id.*

Cases interpreting Oklahoma law have uniformly confirmed the limitation on the *Christian* cause of action expressed in *Rodgers.* In *Roberts v. Wells Fargo AG Credit Corp.,* 990 F.2d 1169, 1174 (10th Cir.1993), the court found there was no "special relationship" created in the context of banking, and thus found no duty to act in good faith. More recently, in *F.D.I.C. v. Hamilton,* 122 F.3d 854, 863 (10th Cir.1997) (Ebel, J., dissenting), the dissent explained that "Oklahoma, like most states, allows tort recovery in situations where the defendant's conduct amounts to an independent tort, such as fraud." Judge Ebel added that "Oklahoma has also allowed recovery for tortious breach of contract, but only in the insurance context," and that the Oklahoma Supreme Court has thus far declined to extend this theory to other settings. *Id.* at 863 n. 1; *see also Wolf v. Prudential Ins. Co. of America,* 50 F.3d 793, 797 (10th Cir.1995) (stating that "*Christian* found that the special relationship on which an insurer's duty of good faith is based re-

sults from the quasi-public nature of insurance, the unequal bargaining power between the insurer and insured, and the potential for an insurer to unscrupulously exert that power at a time when the insured is particularly vulnerable.")

Based upon this review of Oklahoma case law, it is clear that *Christian* arises out of the special relationship between insured and insurer. Accordingly, the Oklahoma Supreme Court has limited the cause of action at all times exclusively to insurance contracts.

## V

The question before this Court is whether a state tort action grounded in statutory policy specific to the insurance industry and applied exclusively to contracts between insurance companies and their insureds constitutes a state law that "regulates insurance" under the ERISA saving clause, 29 U.S.C. § 1144(b)(2)(A) (1994).

■ The United States Supreme Court recently articulated the analytical framework to be applied by this Court in resolving whether a state law "regulates insurance" within the meaning of the saving clause. *See UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999). First, the Court asks whether, from a "common-sense view of the matter," the contested prescription regulates insurance. *See UNUM*, 119 S.Ct. at 1386, (quoting *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985)); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Second, the Court considers three factors employed to determine whether the regulation fits within the "business of insurance" as that phrase is used in the McCarran–Ferguson Act, ch. 20, 59 Stat. 33 (1945) (codified as amended at 15 U.S.C. § 1011–1015 (1994)): "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, wheth-

er the practice is limited to entities within the insurance industry." *UNUM*, 119 S.Ct. at 1386, (quoting *Metropolitan Life*, 471 U.S. at 743, 105 S.Ct. 2380 (emphasis, citations and internal quotation marks omitted)); *see also Pilot Life*, 481 U.S. at 48–49, 107 S.Ct. 1549.

In *UNUM*, the state law at issue was a California common law notice-prejudice rule that provided as follows:

> [A] defense based on an insured's failure to give timely notice [of a claim] requires the insurer to prove that it suffered actual prejudice. Prejudice is not presumed from delayed notice alone. The insurer must show actual prejudice, not the mere possibility of prejudice. (citations omitted).

*UNUM*, 119 S.Ct. at 1386. The Supreme Court applied the above-described analysis and concluded that California's notice-prejudice rule regulated insurance under ERISA, and therefore escaped preemption under ERISA's saving clause. *See id.* Applying the same analysis in the instant case, the Court finds that a *Christian* cause of action similarly "regulates insurance" and therefore escapes preemption under the saving clause.

## A

■ In accordance with the first steps of the *UNUM* analysis, the Court finds that the *Christian* cause of action "regulates insurance" as a matter of common sense. First, the cause of action is based on the legislatively-mandated state policy that insurance companies must pay claims promptly and in good faith. *Christian* expressly references this statutory policy in establishing the tort of breach of the covenant of good faith. *See Christian*, 577 P.2d at 903.

Second, *Christian* and its progeny make clear that its purpose is to regulate the relationship between insurance companies and their insureds. As the Oklahoma Supreme Court stated in *McCorkle*:

> We believe that the purchaser of insurance does not contract to obtain a

commercial advantage but to protect himself/herself against the risks of accidental losses and the mental stress which could result from such losses. Therefore, we think one of the primary reasons a consumer purchases any type of insurance (and the insurance industry knows this) is the peace of mind and security that it provides in the event of loss.

We affirm our position in *Christian* and hold that it applies to all types of insurance companies.

637 P.2d at 588.

Third, the survey of Oklahoma Supreme Court authorities reveals no case in which liability in tort for breach of the covenant of good faith and fair dealing has been applied outside the insurance area. To the contrary, the state Supreme Court has repeatedly rejected efforts to extend *Christian* beyond the insurance industry. Thus, the rule at all times has been applied as originally stated: "We approve and adopt the rule that an *insurer* has an implied duty to deal fairly and act in good faith *with its insured* and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive damages may be sought." *Christian*, 577 P.2d at 904. (emphasis added)

In its brief, Defendant first asserts that the breach of the covenant of good faith is found in a variety of cases, citing *Wright v. Fidelity & Deposit Co.*, 176 Okla. 274, 54 P.2d 1084 (1935) and *Hall v. Farmers Ins. Exchange*, 713 P.2d 1027 (Okla.1985). Careful research, however, belies this assertion. As discussed above, the cases of the Oklahoma Supreme Court uniformly and without exception refused to extend the *Christian* tort beyond the insurance field.[8] *See First Bank of Turley v. Fidelity & Deposit Ins. Co. of Maryland,* 928 P.2d 298, 307 (Okla.1996). The contract cases cited by Defendant are therefore inapposite.

Defendant further argues that the cause of action for breach of the covenant of good faith in Oklahoma resembles the Mississippi law at issue in *Pilot Life.* Under that law, punitive damages could be sought for "bad faith" in denying claims without any reasonably arguable basis for the refusal to pay. *See UNUM,* 119 S.Ct. at 1387 (citing *Pilot Life,* 481 U.S. at 50, 107 S.Ct. 1549). The United States Supreme Court determined in *Pilot Life* that although Mississippi had "identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law." *Pilot Life,* 481 U.S. at 50, 107 S.Ct. 1549. The Court stated that under the Mississippi common law of bad faith, "any breach of contract, and not merely breach of an insurance contract, may lead to liability for punitive damages." *Id.* As a result, the Court in *Pilot Life* held that the law in question did not "regulate insurance" under either the McCarran–Ferguson factors or a common-sense understanding of that phrase, and therefore did not fall within the ERISA saving clause. *Id.*

The differences between the Oklahoma tort and the Mississippi tort are manifest. First, as discussed above, the *Christian* tort is "firmly planted" in Oklahoma's statutory "policy concerns specific to the insurance industry," *UNUM,* 119 S.Ct. at 1388, not in "the general principles of [state] tort and contract law." *Id.* at 1387. Furthermore, this tort does not exist outside the insurance industry, and therefore

---

**8.** Defendant asserts that *Rodgers* did not expressly refuse to extend the obligation of good faith and fair dealing beyond the insurance industry. However, subsequent cases make clear that this was the result of *Rodgers. See e.g. First Bank of Turley,* 928 P.2d at 307. Moreover, the reference in *Rodgers* to tort liability for "recklessness or wanton negligence" merely confirms the axiom that if a party is the victim of both a breach of contract and tortious conduct, an action for the tort alone may be brought. Moreover, Defendant's citations to pre-*Christian* simple tort cases such as *Owens v. State,* 133 Okla. 183, 271 P. 938 (1928) and *Lilly v. St. Louis & S.F. Ry. Co.,* 31 Okla. 521, 122 P. 502 (1912) are also inapposite.

is not available for "any breach of contract." *Id.* Thus, *Pilot Life* is inapposite. Similarly, authorities determining that ERISA preempts California statutory law prohibiting insurers from engaging in unfair claims settlement practices, *see Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489 (9th Cir.1988); *Commercial Life Ins. Co. v. Superior Court*, 47 Cal.3d 473, 253 Cal.Rptr. 682, 764 P.2d 1059 (1988), are inapplicable, because the *Christian* cause of action is not derived from California statutory law.

In light of the above, the Court concludes that, like the California notice-prejudice rule, the *Christian* tort "is distinctive most notably because it is a rule firmly applied to insurance contracts, not a general principle guiding a court's discretion in a range of matters." *UNUM*, 119 S.Ct. at 1388. Thus, *Christian* "is a rule of law governing the insurance relationship distinctively." *Id.* at 1389.

## B

 Having determined that the *Christian* cause of action "regulates insurance from a common sense view of the matter," the Court next applies the criteria used to determine whether a state law regulates the "business of insurance" under the McCarran–Ferguson Act. *See* 119 S.Ct. at 1386, 1389. Preliminarily, the Court notes that the *UNUM* opinion expressly rejected the assertion that a state regulation must satisfy all three McCarran–Ferguson factors in order to "regulate insurance" under ERISA's saving clause.[9] *See id.* at 1389. Rather, the *UNUM* court indicated that the McCarran–Ferguson factors are "considerations [to be] weighed" in determining whether a state law regulates insurance, *id.*, (quoting *Pilot Life*, 481 U.S. at 49, 107 S.Ct. 1549), and that "[n]one of these criteria is necessarily determinative in itself," *id.*, (quoting *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982)).

The *UNUM* Court observed that in *Metropolitan Life*, the case in which the Court first used the McCarran–Ferguson formulation to assess whether a state law "regulates insurance" for purposes of ERISA's saving clause, the Supreme Court called the McCarran–Ferguson factors "relevant"; it "did not describe them as 'required.'" *UNUM*, 119 S.Ct. at 1389; *see also O'Connor v. UNUM Life Ins. Co. of America*, 146 F.3d 959, 963 (D.C.Cir. 1998) ("That the factors are merely 'relevant' suggests that they need not all point in the same direction, else they would be 'required.'"). The framework established in *Metropolitan Life* first requires the court to ask whether the law in question fit a common-sense understanding of insurance regulation," *UNUM*, 119 S.Ct. at 1389 (quoting *Cisneros*, 134 F.3d at 945), and then to look to the McCarran–Ferguson factors as checking points or "guideposts, not separate essential elements ... that must each be satisfied" to save the state's law. *Id.* at 1389 (quoting *Cisneros*, 134 F.3d at 946).

The first McCarran–Ferguson factor asks whether the rule at issue "has the effect of transferring or spreading a policyholder's risk." *Id.* at 1389 (quoting *Metropolitan Life*, 471 U.S. at 743, 105 S.Ct. 2380 (internal quotation marks omitted)). As in *UNUM*, this Court need not pursue this point, because the remaining McCarran–Ferguson factors, verifying the common-sense view, are securely satisfied. *See id.*

The *Christian* tort serves as "an integral part of the policy relationship between the insurer and the insured," and thus satisfies the second McCarran–Ferguson factor. *See id.* (quoting *Metropolitan Life*, 471 U.S. at 743, 105 S.Ct. 2380). Oklahoma's rule changes the bargain between insurer and insured; consistent with the statutory Insurance Code, it "effectively creates a mandatory contract term" that

---

**9.** The Court notes that prior to *UNUM*, courts have required that all three McCarran–Ferguson factors be satisfied in order to avoid pre-

emption. *See, e.g., Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460 (10th Cir. 1997).

requires the insurer to promptly and in good faith pay off legitimate claims. *Id.,* 119 S.Ct. at 1389–90 (quoting *Cisneros,* 134 F.3d at 946). As the Ninth Circuit said of California's notice-prejudice rule, the *Christian* cause of action "dictates the terms of the relationship between the insurer and the insured, and consequently, is integral to that relationship." *Id.* at 1390 (quoting *Cisneros,* 134 F.3d at 946).

The *Christian* cause of action also satisfies the third McCarran–Ferguson factor, which asks whether the rule is limited to entities within the insurance industry. As discussed at length above, the Oklahoma Supreme Court has consistently declined to extend the *Christian* tort beyond the insured-insurer relationship, recognizing that the tort, as well as its statutory underpinnings, are designed to address the uniqueness of that relationship. Thus, a *Christian* cause of action "does not merely have an impact on the insurance industry; it is aimed at it." *UNUM,* 119 S.Ct. at 1390 (quoting *FMC Corp. v. Holliday,* 498 U.S. 52, 61, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)).

### VII

In conclusion, the Court finds that the *Christian* cause of action is based on Oklahoma's statutory policy concerns specific to the insurance industry. The Court further finds that the *Christian* tort does not exist outside the context of insurance contracts. Because under *UNUM, Christian* satisfies the requirements of the McCarran–Ferguson Act for a state law that regulates the business of insurance, the Court concludes that the cause of action is a state law that regulates insurance and therefore avoids preemption pursuant to ERISA's saving clause.

Based on the above, Defendant's Motion to Dismiss Plaintiff's second cause of action is hereby denied.

IT IS SO ORDERED.