Shawn S. **CLANCY**

v.

**EMPLOYERS HEALTH INSURANCE COMPANY**

No. CIV.A. 99–0381.

United States District Court, E.D. Louisiana.

June 26, 2000.

George R. Covert, George R. Covert, Sean Duvall Fagan, Sean Fagan, Baton Rouge, LA, for Plaintiff.

Kyle Liney Gideon, Davidson, Meaux, Sonnier, McElligott & Swift, Lafayette, LA, Brian P. Brooks, O'Melveny & Myers, Washington, DC, for Defendant.

### ORDER AND REASONS

CLEMENT, District Judge.

Before the Court is Plaintiff Shawn S. Clancy's Motion for New Trial. For the following reasons, Ms. Clancy's Motion is DENIED.

### A. BACKGROUND

On November 24, 1999, this Court granted Defendant Employer Health Insurance Company's ("EHIC") Motion for Summary Judgment and denied Ms. Clancy's Motion for Class Certification. *See Clancy v. Employers Health Ins. Co.*, 82 F.Supp.2d 589 (E.D.La.1999) (hereinafter *"Clancy I"*). The Court ruled that Ms. Clancy's claims for benefits, clarification of rights and bad faith damages were preempted by ERISA, that Ms. Clancy failed to exhaust her administrative remedies, and that class certification was improper. The Court contemporaneously entered judgment against Ms. Clancy in favor of EHIC. Ms. Clancy subsequently moved for a new trial under Federal Rule of Civil Procedure 59 on the grounds that the Court's decision in *Clancy I* was clearly erroneous and resulted in a miscarriage of justice.

### B. LAW AND ANALYSIS

Because Ms. Clancy's claims were dismissed as a result of a dispositive motion, the Court shall treat her motion for a new trial as a Rule 59(e) motion to alter or amend judgment. *See Ford Motor Credit Co. v. Bright*, 34 F.3d 322, 324 (5th Cir. 1994) (Rule 59(e) allows a losing party to "seek the trial court's reconsideration of its order granting summary judgment if served within 10 days of the rendition of judgment.").

A district court enjoys considerable discretion in granting or denying a motion under Rule 59(e). *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir.1993). Courts typically consider four factors in exercising their discretion: (1) whether the judgment was based upon a manifest error of fact or law; (2) whether the movant presents newly discovered or previously unavailable evidence; (3) whether amendment is necessary to prevent manifest injustice; and (4) whether an intervening change in controlling law has occurred. *See Franco v. Maraldo*, 2000 WL 288378, at *2 (E.D.La. March 16, 2000); *Campbell v. St. Tammany Parish Sch. Bd.*, 1999 WL 777720, at *2 (E.D.La. Sept.29, 1999); *Fields v. Pool Offshore, Inc.*, 1998 WL 43217, at *2 (E.D.La. Feb.3, 1998). In addition, Courts must attempt to strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the

basis of all the facts. *See Edward H. Bohlin,* 6 F.3d at 355. In general, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly ...," *Pacific Ins. Co. v. American Nat. Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir.1998), *cert. denied* 525 U.S. 1104, 119 S.Ct. 869, 142 L.Ed.2d 771 (1999) (quoting 11 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2810.1, at 124 (2d ed.1995)), since "courts and litigants cannot be repeatedly called upon to backtrack through the paths of litigation which are often laced with close questions." *Sussman v. Salem, Saxon & Nielsen,* 153 F.R.D. 689, 694 (M.D.Fla.1994). *See also Pennsylvania Ins. Guar. Ass'n v. Trabosh,* 812 F.Supp. 522, 524 (E.D.Pa.1992) ("Motions for reconsideration should be granted sparingly because of the interests in finality and conservation of scarce judicial resources.").

■ Ms. Clancy argues, for a variety of reasons, that the Court's order and judgment in *Clancy I* were "clearly contrary to the law" and resulted in "a miscarriage of justice." The Court disagrees. In deciding *Clancy I,* the Court carefully considered each of Ms. Clancy's multitudinous arguments and rendered a reasoned—and reasonable—opinion. Ms. Clancy's arguments failed to carry the day at the summary judgment stage of this litigation, and those arguments, which Ms. Clancy essentially re-urges in her current motion, cannot do so now.[1]

Ms. Clancy does present one new argument that could not have been considered previously. She contends that a recent case, *Lewis v. Aetna U.S. Healthcare, Inc.,* 78 F.Supp.2d 1202 (N.D.Okla.1999), illustrates the deficiencies in this Court's opinion. In *Lewis,* a federal district court in Oklahoma ruled that Oklahoma's bad-faith cause of action against insurers is saved from preemption, in part because it "serves as an integral part of the policy relationship between the insurer and the insured, and thus satisfies the second McCarran–Ferguson factor." *Id.* at 1214 (internal citation omitted).

In finding that ERISA preempts Louisiana Revised Statute 22:657, this Court in *Clancy I* relied heavily on the Louisiana Supreme Court's decision in *Cramer v. Association Life Ins. Co.,* 569 So.2d 533, 537 (La.1990), which squarely rejected the idea that § 657 constitutes an integral part of the policy relationship.[2] In reaching this conclusion, the Louisiana Supreme Court held that § 657 is not integral because it regulates only the procedural aspect of processing and settling claims but not the substantive provisions of the insurance contract. The Supreme Court in *UNUM* rejected "UNUM's suggestion that because the notice-prejudice rule regulates only the administration of insurance policies, not their substantive terms, it cannot be an integral part of the policy relationship," 526 U.S. at 375 n. 5, 119 S.Ct. at 1390 n. 5, and Ms. Clancy is, therefore, correct that *UNUM* casts some doubt on this aspect of the *Cramer* holding.[3]

1. The Court acknowledges that, given the complexity of the ERISA jurisprudence, suits like Ms. Clancy's are often "laced with close questions." *See Clancy I,* 82 F.Supp.2d, at 596 n. 9 (acknowledging complexity of ERISA jurisprudence). The Court simply disagrees with Ms. Clancy that it answered those questions incorrectly.

2. The Court also relied on similar decisions by several federal district courts in Louisiana.

3. In *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39

(1987), the Supreme Court found that the Mississippi common law of bad-faith, upon which, plaintiff's claim was premised, is not integral to the insurer-insured relationship because it does not "define the terms of the relationship between the insurer and insured", but "declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages." *Id.* at 51, 107 S.Ct. at 1555. It is unclear whether *UNUM* overrules this aspect of the *Pilot Life* decision or whether *UNUM* simply recognizes that, in

Importantly, however, *Cramer*'s pre-emption holding did not rest entirely on this ground. Rather, after noting that "the McCarran–Ferguson test is not the sole consideration to be addressed in determining whether a particular state law is preempted by ERISA", 569 So.2d at 538, the *Cramer* court held that La. R.S. 22:657 is preempted because it conflicts with ERISA § 502(a), which provides the exclusive remedy for enforcing ERISA. *See id.* This aspect of the *Cramer* decision is thoroughly grounded in the Supreme Court's decision in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

In *Pilot Life,* the Supreme Court stated that, in interpreting the saving clause, a court is obliged to consider not only the McCarran–Ferguson factors, "but also the role of the saving clause in ERISA as a whole." *Id.* at 51, 107 S.Ct. at 1555. According to the Court,

> [b]ecause in this case, the state cause of action seeks remedies for the improper processing of a claim for benefits under an ERISA-regulated plan, our understanding of the saving clause must be informed by legislative intent concerning the civil enforcement provisions provided by ERISA § 502(a), 29 U.S.C. § 1132(a).

*Id.* at 51–52, 107 S.Ct. at 1555. The Court then held that

> Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope of § 502(a)

would pose an obstacle to the purposes and objectives of Congress.

*Id.* at 52, 107 S.Ct. at 1555. Considered in light of the structure of ERISA's text and the legislative history, the Court concluded that

> the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.

*Id.* at 54, 107 S.Ct. at 1556 (internal punctuation omitted). In the Court's opinion,

> [t]he deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive.

*Id.* Moreover,

> [t]he expectations that a federal common law of rights and obligations under ERISA-regulated plans would develop, indeed, the entire comparison of ERISA's § 502(a) to § 301 of the LMRA [Labor–Management Relations Act], would make little sense if the rem-

certain situations, state laws governing the administration of insurance policies can be integral to the insurer-insured relationship. A third option is that, because the bad faith law involved in *Pilot Life* was not specifically directed toward the insurance industry, it could not constitute an integral part of a relationship based in that industry. This

third option would seem to conflate several aspects of the "saving clause" analysis, but it might have been the Supreme Court's intent. Regardless, in finding Mississippi's bad faith law preempted, the Court in *Pilot Life* considered factors other than the McCarran–Ferguson factors, as discussed below. Thus, resolution of this issue is unnecessary at this time.

edies available to ERISA participants and beneficiaries under § 502(a) could be supplemented or supplanted by varying state laws.

*Id.* at 56, 107 S.Ct. at 1558. Thus, "[c]onsidering the common-sense understanding of the saving clause, the McCarranFerguson Act factors defining the business of insurance, and, *most importantly, the clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive,*" the Court concluded that "Dedeaux's state law suit asserting improper processing of a claim for benefits under an ERISA-regulated plan is not saved by § 514(b)(2)(A), and therefore is pre-empted by § 514(a)." *Id.* at 57, 107 S.Ct. at 1558 (emphasis added).

■ Unlike the United States Supreme Court in *Pilot Life* and the Louisiana Supreme Court in *Cramer,* the district court in *Lewis* did not consider the role of the saving clause in ERISA as a whole and the potential conflict between a bad faith claim and ERISA § 502(a), but instead relied entirely on the common-sense and McCarran–Ferguson tests for saving.[4] In this Court's view, however, *UNUM* does not

change the proposition that, in considering whether a particular state law is saved from preemption, a court must consider the role of the saving clause as a whole. When this factor is considered, the Court believes that *Cramer* is still good law. As this Court ruled in *Clancy I, UNUM* did not change the proposition that § 502(a) provides the exclusive remedy for enforcing ERISA. Because of this, the Court rejects Ms. Clancy's oft-repeated claim that La. R.S. 22:657 is more like the notice-prejudice rule saved in *UNUM* than the common law bad faith claim preempted in *Pilot Life.* While La. R.S. 22:657, like the notice-prejudice rule, certainly does seem to be directed exclusively at the insurance industry and arguably forms an integral part of the insurer-insured relationship, La. R.S. 22:657, unlike the notice-prejudice rule, creates a "supplemental" state law remedy that conflicts with ERISA § 502(a)'s exclusive remedy provision.[5] This aspect of the *Cramer* decision is unchanged by *UNUM,* and the Court, therefore, rejects Ms. Clancy's contention that it clearly erred in finding La. R.S. 22:657 preempted by ERISA.[6]

4. In *Gaylor v. John Hancock Mut. Life Ins. Co.,* 112 F.3d 460 (10th Cir.1997), the Tenth Circuit held that a claim of bad faith under Oklahoma law was preempted by ERISA because the bad faith law failed the McCarran–Ferguson test and because a claim under that law would conflict with ERISA § 502(a). *See id.* at 466. In ruling that the Oklahoma bad faith law was actually *saved* from preemption, the *Lewis* court implied that *UNUM* had overruled the preemption test used by the Tenth Circuit in *Gaylor.* Specifically, the *Lewis* court stated that the *Gaylor* court required that all three McCarran–Ferguson factors be satisfied in order to avoid preemption, a position that was rejected in *UNUM. See Lewis,* 78 F.Supp.2d at 1214 n. 9 and accompanying text. The *Lewis* court did not, however, address whether the bad faith law was nevertheless preempted because it conflicted with ERISA § 502(a).

5. The Court can anticipate Ms. Clancy's rejoinder: absent the notice prejudice rule, the plaintiff in *UNUM* would not be entitled to any benefits, and, therefore the notice prejudice rule *does* create a supplemental remedy. The problem with this argument is clear: the

notice prejudice rule allows a claimant to recover benefits provided under the terms of the contract and thus does not conflict with ERISA § 502(a), whereas La. R.S. 22:567 adds a new remedy intentionally rejected by Congress in crafting § 502(a).

6. Ms. Clancy argued strenuously on summary judgment that *UNUM did* change the proposition that § 502(a) provides the exclusive remedy for enforcing ERISA. As discussed in *Clancy I,* Ms. Clancy's argument was premised entirely on footnote 7 of the UNUM decision, wherein the Supreme Court set forth, *but did not consider,* the Solicitor General's argument that ERISA does not preempt state law conferring causes of action or affecting remedies that regulate insurance. Ms. Clancy may be correct that the Supreme Court included this argument as a forecast of a future decision. However, were the Supreme Court to adopt the Solicitor General's position on the facts of this case, it would constitute a dramatic reversal of *Pilot Life* 's strong and unequivocal statements with respect to ERISA § 502(a)'s exclusivity. Perhaps such a reversal will occur, but this Court cannot take

468

### C. CONCLUSION

The Court finds that Ms. Clancy has failed to demonstrate that she is entitled to the extraordinary relief offered by Rule 59(e). Accordingly,

IT IS ORDERED that Ms. Clancy's Motion for New Trial is DENIED.

such a dramatic step based upon an equivocal    footnote.